## SOUTHEASTERN COLORADO HOMELESS CENTER, Petitioner,

v.

**Willard WEST, Colorado Compensation Insurance Authority, and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

Nos. 91CA1064, 91CA1066.

Colorado Court of Appeals, Div. I.

July 30, 1992.

Rehearing Denied Sept. 3, 1992.

Certiorari Denied Jan. 4, 1993.

Anderson, Campbell and Laugesen, Thomas M. Schrant, Denver, for petitioner.

Michael W. Seckar, Pueblo, Martin J. Linnet, Denver, for respondent Willard West.

Paul Tochtrop, Denver, for respondent Colorado Compensation Ins. Authority.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas S. Parchman, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Opinion by Judge HUME.

Willard West and his employer, The Southeastern Colorado Homeless Center, seek review of the final order of the Industrial Claim Appeals Panel, which ruled that the Colorado Compensation Insurance Authority was not liable to pay workers' compensation benefits to West because the Center's insurance coverage had lapsed before the industrial accident in which he was injured. We set aside the order.

The facts are undisputed. The Center applied to the Authority for workers' compensation insurance coverage in a letter received by the Authority on May 15, 1989. In a letter dated May 25, 1989, the Authority advised the Center that a binder had been issued in accordance with the Workers' Compensation Act and that the premium was due by June 12 for coverage to be effective from May 16. The letter further stated that if the Authority received payment after June 12, coverage would be effective the day after receipt of the premium. The Authority and the Center later agreed on payment of the premium in quarterly installments, but did not otherwise alter the terms of the May 25 letter.

The Authority received the payment on June 16, and issued a policy effective June 17. West, however, was injured in a job related accident on June 15.

The administrative law judge ruled that coverage began on May 16 and did not lapse because the Center paid the premium within the 30–day grace period provided by § 8–45–113, C.R.S. (1991 Cum.Supp.). The Panel reversed, concluding that the grace period did not apply to binders.

Section 8–45–112, C.R.S. (1991 Cum. Supp.) provides in part that: "No contract of insurance between the Colorado compensation insurance authority and any employer shall be in effect until a *policy or binder* has been actually issued by the board and the premium therefor paid as and when required by this article." (emphasis added)

Section 8–45–113 provides in relevant part that: ,

If any employer is in arrears for more than thirty days in any payment or wage report required to be made by said employer to the Colorado compensation insurance authority as provided in articles 40 to 47 of this title for *advance premium, deposit premium,* additional audited premium, or periodic premium, the employer shall by virtue of such arrearage be in default of such payment or reporting and *any policy* issued to such employer by said authority *shall thereupon be cancelled without notice as of the effective* or renewal *date in the case*

*of a new* or renewal *policy* or as of the due date in the case of an existing policy. (emphasis added)

 The Panel based its conclusion that § 8–45–113 was inapplicable on the absence therein of a reference to binders following the express reference to both policies and binders in § 8–45–112. We reject the Panel's approach and agree with West and the Center that a binder is a policy within the scope of § 8–45–113.

The term, "any policy," is ambiguous. There is no statutory definition of "policy" or "binder," and the common law definitions are ambiguous. Depending on the definitions used, a binder may be a temporary policy, or it may be a contract preliminary to a policy.

Although technically the term, "insurance policy," means the formal written instrument evidencing a contract of insurance, it is often used interchangeably with the term, "contract of insurance." *See* 1 G. Couch, *Cyclopedia of Insurance Law* § 3:1 (R. Anderson rev. 2d ed. 1984); *United Benefit Life Insurance Co. v. McCrory,* 414 F.2d 928 (8th Cir.1969), *cert. denied,* 396 U.S. 1039, 90 S.Ct. 687, 24 L.Ed.2d 684 (1970).

A binder has been defined as a temporary or preliminary contract of insurance that protects the insured until issuance of a formal policy or as a written memorandum evidencing the existence of such a contract. *See* 1 G. Couch, *supra,* § 3:2; 2 G. Couch, *supra,* § 14:26.

In the absence of an express agreement to the contrary, a binder generally incorporates the terms of the contemplated policy. *See* 2 G. Couch, *supra,* § 14:35. A binder is therefore sometimes described as a temporary *policy. See Great American Insurance Co. v. Fireman's Fund Insurance Co.,* 481 F.2d 948 (2d Cir.1973); *Turner v. Worth Insurance Co.,* 106 Ariz. 132, 472 P.2d 1 (1970).

In light of these varied and overlapping meanings, inasmuch as § 8–45–113 does not expressly exclude binders, the specific mention of both policies and binders in § 8–45–112, but only of policies in § 8–45–113

does not resolve the ambiguity inherent in the statutory reference to "any policy."

On the other hand, since § 8–45–113 expressly includes new policies, the grace period provided therein applies to the first premium. Therefore, since binders are commonly issued in connection with payment of the first premium for a new contract of insurance, application of the grace period to the first payment due under a binder would give effect to the express application of the statute to new policies.

Moreover, § 8–44–102, C.R.S. (1991 Cum. Supp.) provides that: "Every contract for the insurance of compensation and benefits" is "subject to all the provisions" of the Workers' Compensation Act. Thus, since, under a broad definition, a binder is a contract of insurance, § 8–44–102 would make the grace period of § 8–45–113 applicable to binders. Also, § 8–45–113 is intended to protect employers as well as employees from lapses in coverage resulting from late payment of premiums, including first premiums for new policies. Construing the statute broadly to include binders will serve that purpose. *See B.B. v. People*, 785 P.2d 132 (Colo.1990) (construction of ambiguous statute should give effect to its underlying purpose).

 Furthermore, the ultimate object of compensation insurance is to assure payment of benefits to injured employees. 4 A. Larson, *Workmen's Compensation Law* §§ 92.00, 92.20 (1990). *See* § 8–44–101(1), C.R.S. (1991 Cum.Supp.); *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985).

That purpose is served if the statutory requirements for the cancellation of workers' compensation insurance policies is applied to binders, and such construction of the statute is consistent with holdings in other jurisdictions. *See Ives v. Sunfish Sign Co.*, 275 N.W.2d 41 (Minn.1979); *Moore v. Adams Electric Co.*, 264 N.C. 667, 142 S.E.2d 659 (1965). *See also Red Cab Co. v. St. Paul Mercury Indemnity Co.*, 98 F.2d 189 (7th Cir.), *cert. denied*, 305 U.S. 646, 59 S.Ct. 148, 83 L.Ed. 417 (1938); *T.H. Mastin & Co. v. Russell*, 214 Miss. 700, 59 So.2d 321 (1952). Accordingly, we

conclude that "any policy" in § 8–45–113 includes binders as well as formal policies. Thus, since the premium was paid within the 30–day grace period, coverage did not lapse, and West was entitled to receive benefits under the policy.

The order is set aside, and the cause is remanded with directions to reinstate the order of the administrative law judge.

PIERCE and ROTHENBERG, JJ., concur.