**UNIGARD SECURITY INSURANCE COMPANY, Plaintiff–Appellant and Cross–Appellee,**

v.

**MISSION INSURANCE COMPANY TRUST, Defendant–Appellee and Cross–Appellant.**

Nos. 98CA1326, 98CA2546.

Colorado Court of Appeals, Div. I.

Feb. 3, 2000.

As Modified on Denial of Rehearing April 20, 2000.

Certiorari Denied Oct. 10, 2000.

Antonio Bates Bernard, P.C., John L. Wheeler, Denver, Colorado, for Plaintiff–Appellant.

Law Offices of Samuel G. Livingston, Samuel G. Livingston, Golden, Colorado, for Defendant–Appellee.

Opinion by Judge ROTHENBERG.

In this declaratory judgment action, plaintiff, Unigard Security Insurance Co. (Unigard), appeals a summary judgment in favor of defendant, Mission Insurance Company Trust (Mission). Mission cross-appeals certain rulings of the trial court. We affirm in part, reverse in part, and remand with directions.

Unigard and Mission issued liability policies to the same insured, Western Pop Shoppes (Western), a subsidiary of Pop Shoppes of America, Inc.

The Unigard policy was issued on July 29, 1978, and was a primary general liability policy with a $500,000 limit. It designated Western as a named insured and stated that

any person using any automobile "owned, hired, or borrowed" by any named insured (here, Western) was also an insured under the policy. However, no person using an automobile that had been "hired or borrowed" from an employee of Western was covered.

The Mission policy was an excess liability policy with a general limit of $5 million. Under its terms, Western and its employees acting within the scope of their employment were insureds. The Mission policy required exhaustion of the primary insurance limits before its coverage began. But, if one of its insureds was not covered by the primary insurance, Mission provided coverage after the first $10,000.

While these two policies were in effect, a sales and promotional meeting was held in Denver for employees of Western and other subsidiaries of Pop Shoppes of America. One of Western's employees, Lloyd McKinley, was ordered to provide transportation services for out-of-town employees. In the course of returning one of the other subsidiary's employees to her hotel and while he was allegedly under the influence of alcohol, McKinley was involved in a one-vehicle collision. It resulted in serious and permanent injuries to his passenger.

The vehicle involved in the collision was leased to McKinley by a third party, and McKinley had obtained a personal liability insurance policy with a limit of $100,000 protecting him while he was driving the vehicle. Western had not hired or borrowed the vehicle from McKinley.

The injured employee sued McKinley and Western in federal district court asserting that McKinley's negligence had caused her injuries while he was acting within the course and scope of his employment with Western. The parties entered into a settlement agreement which resulted in the dismissal with prejudice of the injured employee's claims against McKinley and Western. The employee was paid a total of $980,000. Of that amount, McKinley's private liability insurer paid its policy limit of $100,000. That insurer is not a party to this litigation. Unigard contributed $280,700 to the settlement, and Mission contributed $599,300.

At the time the federal case was settled, Unigard and Mission disagreed on the amount each was legally obligated to contribute. Consequently, they agreed that their contributions would be made with a full reservation of their rights to obtain a later judicial determination of that issue.

Following the settlement, Unigard filed this action, maintaining, *inter alia*, that McKinley was not covered under its primary policy because he was not using a vehicle covered by that policy. The trial court granted summary judgment in favor of Unigard, that portion of the judgment was certified as final under C.R.C.P. 54(b), and Mission appealed.

In *Unigard Mutual Insurance Co. v. Mission Insurance Co.*, 907 P.2d 94 (Colo.App. 1994), a division of this court affirmed the trial court. The panel held that McKinley was not an insured under Unigard's policy, and that Unigard was not required to contribute up to the limit of its policy before Mission became liable for coverage.

On remand, Mission continued the litigation on the theory that the Unigard policy did not reflect the terms of Unigard's agreement with Western. In the course of discovery, Mission learned of the existence of two endorsements that had been omitted from the policy sent to Western and later filed with the court. Neither endorsement was available to the division that decided *Unigard Mutual Insurance Co. v. Mission Insurance Co., supra.*

Mission moved for a summary judgment, contending that McKinley was covered by the endorsements to the Unigard policy. Mission also filed a fraud counterclaim and jury demand based on the alleged concealment of the endorsements.

As additional grounds for summary judgment, Mission contended that at the time of the accident, Unigard was liable based on the coverage contained in the temporary binder of insurance. Mission relied on a May 1978 memo in which Unigard had agreed to be bound for the same coverage provided by Western's previous primary insurer. The previous insurance would have covered

McKinley, but the Unigard policy reduced the coverage contained in the binder.

Mission maintains that because Unigard replaced the temporary binder with a policy containing reduced coverage, it was required to comply with the notice requirements in § 10–4–720, C.R.S.1999, and Department of Regulatory Agencies Regulation No. 74–11, 3 Code Colo. Reg. 702–3 (currently in effect as Department of Regulatory Agencies Regulation No. 6–1–1, 3 Code Colo. Reg. 702–6).

According to Mission, both § 10–4–720 and Regulation No. 74–11 required Unigard to provide Western with written notice of the reduced coverage, and because Unigard failed to give such notice, the reduction in the policy was ineffective; hence, McKinley was still covered under the binder's broader definition of named insureds.

The trial court agreed and granted summary judgment against Unigard based on Unigard's failure to comply with the notice requirement. After the court entered final judgment and awarded attorney fees and costs to Mission, Unigard filed this appeal. Mission cross-appealed, challenging the calculation of the interest rate on the judgment, the denial of summary judgment regarding the endorsements, the striking of Mission's fraud counterclaim and jury demand, and the reduction of Mission's claim by the $100,000 contributed to the underlying settlement by McKinley's private liability insurer.

## I.

The primary issue in this appeal is whether the notice requirement in § 10–4–720, C.R.S.1999, applies to the replacement of a temporary binder of insurance with a new insurance policy. Unigard contends the notice requirement does not apply to binders and we agree.

■ A binder is a temporary or preliminary contract of insurance that protects the insured until issuance of a formal policy or a written memorandum evidencing the existence of such a contract. Absent an express agreement to the contrary, a binder incorporates the terms of the contemplated policy. *Southeastern Colorado Homeless Center v. West,* 843 P.2d 117 (Colo.App.1992).

■ A binder is effective from the time it is issued until "issuance of the formal policy or until rejection of the risk." *King v. Allstate Insurance Co.,* 906 F.2d 1537, 1541 (11th Cir.1990). Once the formal policy is issued, the binder merges into the policy and is extinguished. Its coverage no longer exists. *Chevron Oil Co. v. Industrial Commission,* 169 Colo. 336, 456 P.2d 735 (1969).

Section 10–4–720 is a part of the Colorado Auto Accident Reparations Act (the No–Fault Act). As relevant here, it provides that no insurer may reduce the coverage under any insurance policy that complies with the No–Fault Act without first giving the insured written notice. The notice must be clear and specific, setting out the type of coverage reduced and the extent of the reduction. The notice must also provide the effective date of the action, the reasons for the action, and the rights of the insured to protest the action to the Commissioner of Insurance.

Section 10–4–720 does not apply to any "insurance policy or coverage" that has been in effect at least sixty days at the time notice of cancellation, nonrenewal, or reclassification is mailed or delivered by the insurer, unless it is a renewal policy. Section 10–4–720(9), C.R.S.1999.

The parties here agree that over sixty days had elapsed between the date Unigard's binder took effect and the time Unigard issued its policy. Hence, § 10–4–720 would apply if a binder is an "insurance policy" within the meaning of the statute. We conclude that it is not.

■ The standard of review for statutory construction is *de novo. Watson v. Vouga Reservoir Ass'n,* 969 P.2d 815 (Colo.App. 1998).

Our primary task in construing a statute is to give effect to the intent of the General Assembly. To discern that intent, we first look at the plain language of the statute and interpret its terms in accordance with their commonly accepted meanings. A strained or forced construction of a statutory term is to be avoided. We also look at the context in which a statutory term is employed and at-

tempt to choose a construction that serves the purpose of the legislative scheme. *Paraguay Place–View Trust v. Gray*, 981 P.2d 681 (Colo.App.1999).

■ Here, we need look no further than the plain language of the statute. Section 10–4–720(1) states that the statute applies to "a policy of insurance," the commonly accepted meaning of which is a formal insurance contract. Binders are not included in the statute and we conclude that if the General Assembly had intended to include them within the scope of the statute, it would have done so explicitly as other states have done. *See* Md.Code Ann., Insurance § 27–605 (1997)(containing similar notice requirement but specifying its application to binders that have been in effect for at least 45 days).

■ A strict construction limiting § 10–4–720 to insurance policies is also consistent with the statute's purpose, which is to protect insureds from the presumption that their existing motor vehicle insurance policies continue without alteration during the policy period and at renewal.

■ A binder is automatically extinguished when the formal policy is issued. *See Chevron Oil Co. v. Industrial Commission, supra.* An insured is charged with knowledge of the policy's terms and is therefore on notice that the scope of his, her, or its insurance coverage is governed by the terms of the policy rather than by the terms of the binder. *See Pete's Satire, Inc. v. Commercial Union Insurance Co.*, 698 P.2d 1388 (Colo.App.1985)(insured was in possession of policy and charged with knowledge of the restrictions in the policy).

■ Thus, the temporary binder issued by Unigard in May 1978, was extinguished as a matter of law on July 29, 1978, when the formal policy was issued. The policy itself provided notice of the reduction in coverage. Because we conclude the notice requirement in § 10–4–720 does not apply to binders, Unigard was not required to comply with its terms, and the trial court erred in ruling otherwise.

## II.

We also agree with Unigard that the trial court erred by applying Regulation No. 74–11 to the replacement of the temporary binder of insurance with a new insurance policy.

■ Regulation No. 74–11, which substantially unchanged is now in effect as Department of Regulatory Agencies Regulation No. 6–1–1, 3 Code Colo. Reg. 702–6, provided that:

Any riders, endorsements, or amendments which limit coverage afforded by an existing policy shall not be effective unless and until the named insured has signified his acceptance thereof by placing his signature on the proposed rider, endorsement, or amendment, one signed and dated copy of which must be attached to the policy.

Regulation No. 74–11, by its terms, is limited to "riders, endorsements, or amendments," and does not apply to the situation presented here.

In summary, we conclude that neither § 10–4–720 nor Regulation No. 74–11 applied to the May 1978 binder, and that the only coverage Unigard provided to Western on the day of the accident was contained in the policy. Because the policy did not cover employees such as McKinley, *see Unigard Mutual Insurance Co. v. Mission Insurance Co., supra,* summary judgment should not have been granted against Unigard.

Given this conclusion, we need not consider Unigard's other assertions of error or Mission's assertion of error regarding the calculation of the interest rate on the judgment.

## III.

■ In its cross-appeal, Mission contends the trial court erred in denying summary judgment regarding two endorsements to Unigard's policy.

However, that ruling is not appealable. *See Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244 (Colo.1996)(denial of a motion for summary judgment is not a final appealable order); *Westerman v. Rogers*, 1 P.3d 228 (Colo.App.1999).

## IV.

Mission next contends the trial court erred in striking its jury demand and fraud counterclaim. We reject both arguments.

### A. Jury Demand

We first reject Mission's contention that the trial court erred in dismissing its jury demand for failure to pay the jury fee in a timely manner under C.R.C.P. 38(b) and 121(c) § 1–3.

Any party may demand a trial by jury by filing and serving upon all other parties a demand no later than ten days after the service of the last pleading directed to the issue. The demanding party shall pay the requisite jury fee upon the filing of the demand. C.R.C.P. 38(b).

█ Each party exercising the right to trial by jury shall file and serve a demand therefor and simultaneously pay the jury fee. Failure of a party timely to file and serve a demand for trial by jury and to pay the jury fee shall constitute a waiver of that party's right to trial by jury. C.R.C.P. 121(c) § 1–3. See McConnell v. District Court, 680 P.2d 528 (Colo.1984)(interpreting a local district court rule in light of C.R.C.P. 121(c) § 1–3).

Because Mission did not pay the jury fee simultaneously with filing the demand, it waived its right to a jury trial. Hence, the trial court did not err in dismissing Mission's jury demand.

### B. Fraud Counterclaim

We also reject Mission's contention that the trial court abused its discretion in striking, as untimely, the fraud counterclaim filed by Mission.

When a motion for more definite statement is granted and the order of the court is not obeyed within ten days after notice of the order or within such other time as the court may direct, the court may strike the pleading to which the motion was directed or make such order as it deems just. C.R.C.P. 12(e).

█ Here, the trial court granted Unigard's motion for more definite statement as to Mission's fraud claim and gave Mission twenty days to respond. Mission filed its more definite statement four days late without explanation. While it was within the trial court's discretion to have accepted the late filing, we cannot say that the court's decision to strike the fraud counterclaim under C.R.C.P. 12(e) and 9(b) was manifestly arbitrary. See Lauren Corp. v. Century Geophysical Corp., 953 P.2d 200 (Colo.App.1998)(trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair).

Nevertheless, on remand, the trial court is free to reconsider its decision and to allow amendment of the pleadings. See In re Estate of Blacher, 857 P.2d 566 (Colo.App.1993)(motions to amend should be freely granted when the interests of justice would be served).

## V.

Because it will arise on remand, we also consider Mission's contention that the trial court erred in considering the $100,000 contributed to the underlying settlement by McKinley's private insurer as an offset in determining the amount of Mission's claim. We disagree.

█ All provisions in an insurance policy must be read as a whole, with the language construed in harmony with the plain and generally accepted meaning of the words employed. In the absence of any ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. Nationwide Mutual Fire Insurance Co. v. Clementi, 989 P.2d 192 (Colo.App.1999).

█ Here, we must interpret the terms of Mission's policy to determine the circumstances under which Mission was obligated to provide coverage. There are two relevant provisions:

> [Mission] shall only be liable for the ultimate net loss the excess of .... the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances ....

> Liability [for Mission] under this policy with respect to any occurrence shall not

attach unless and until the Assured, or the Assured's underlying insurer, shall have paid the amount of the underlying limits on account of such occurrence . . . .

Unigard was the only underlying insurer, and it is undisputed that Unigard's policy had a $500,000 limit. It is also undisputed that McKinley was an "Assured" under the terms of Mission's policy.

Thus, when Mission's policy is read as a whole, it unambiguously obligates Mission to begin providing coverage once $500,000 has been paid by Unigard *or McKinley, or both.* It does not require Unigard to pay the entire amount of the underlying insurance—it merely requires that the entire amount of the underlying insurance be paid.

Accordingly, the trial court did not err in reducing Mission's claim by the $100,000 contributed to the settlement by McKinley's private insurer.

The judgment in favor of Mission is reversed. The orders striking Mission's jury demand and fraud counterclaim are affirmed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Chief Judge HUME and Judge VOGT concur.