This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: July 19, 2018**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                        **NO. S-1-SC-35528**

**ARNOLDO NAVARETTE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Fred T. Van Soelen, District Judge**

Bennett J. Barr, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Elizabeth Ashton, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**MAES, Justice.**

{1}    A jury convicted Defendant Arnoldo Navarette of willful, deliberate, and premeditated first-degree murder under NMSA 1978, Section 30-2-1(A)(1) (1994), and of aggravated battery with a deadly weapon under NMSA 1978, Section 30-3-5(C) (1969).  The district court sentenced Defendant to life imprisonment for the murder, plus three years for the aggravated battery.

{2}    Defendant appeals directly to this Court and raises seven issues: (1) the district court erred by admitting evidence of a previous altercation that involved Defendant, (2) Defendant's convictions are not supported by sufficient evidence, (3) the district court improperly denied Defendant's request to instruct the jury on voluntary manslaughter, (4) the district court erred by allowing a portion of Defendant's video-recorded interview with law enforcement to be played for the jury, (5) the district court abused its discretion by denying Defendant's motion to change venue, (6) Defendant received ineffective assistance of counsel, and (7) Defendant's convictions must be reversed due to cumulative error.

{3}    We have jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA, and we affirm.  Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently

address, we dispose of Defendant's appeal in this non-precedential decision. *See* Rule 12-405(B)(1) NMRA.

## I. BACKGROUND

**{4}** Defendant was originally tried and convicted in 2010 for the first-degree murder of Reynaldo Ornelas (Reynaldo) and the aggravated battery of Danny Ornelas (Danny). On appeal, this Court held that certain expert testimony at Defendant's trial violated the Confrontation Clause and therefore reversed his convictions and remanded for a new trial. *See State v. Navarette*, 2013-NMSC-003, 294 P.3d 345. The instant appeal arises from Defendant's second trial, in which he was tried and convicted again of the same crimes.

**{5}** Defendant's convictions stem from an incident that took place in Portales on Memorial Day weekend in 1993. According to multiple witnesses, Reynaldo and Danny were shot as they were standing next to a parked car that was occupied by Defendant and Defendant's brother-in-law, Dolores "Lolo" Ortega. Reynaldo died from a single gunshot wound to the chest. Danny was shot twice in the arm and survived his injuries. Witnesses gave conflicting testimony at Defendant's trial about whether Defendant or Lolo had shot the two men.

**{6}** Defendant testified in his own defense that he did not shoot Reynaldo or Danny.

Defendant explained that just before the shooting began, he had ducked down in the passenger seat and did not see who fired the shots. But after the shooting stopped and Lolo had driven away, Defendant saw Lolo put a gun under his left leg. Defendant also explained that he left for Denver the day after the shooting and that he later moved to Mexico out of fear of retribution from the Ornelas family. Defendant was arrested in Texas and extradited back to New Mexico in 2009, sixteen years after the shootings occurred. Defendant confirmed that he was relieved when he "finally got arrested" because he "wanted the . . . truth to come out."

**{7}** At the conclusion of Defendant's trial, the jury was instructed on first-degree murder, second-degree murder as a lesser included offense, and aggravated battery with a deadly weapon. After deliberating for less than two hours, the jury convicted Defendant of first-degree murder and aggravated battery with a deadly weapon. This appeal followed. Additional facts will be provided as needed throughout this decision.

## II. DISCUSSION

### A. The District Court Did Not Admit Improper Propensity Evidence

**{8}** Defendant first argues that the district court erred when it allowed one of Reynaldo's brothers, Rick Ornelas (Rick), to testify about a confrontation with Defendant that took place more than two months before Reynaldo was killed. Over

4

Defendant's objection, the following question-and-answer exchange took place at the outset of Rick's direct examination:

Q: Now, in February of 1993, did you have an altercation with Arnoldo Navarette?

A: I did. He pulled a gun on me.

Q: Was it a handgun or a rifle?

A: It was a handgun.

Q: And was that reported to the police?

A: Yes, it was.

The State moved on immediately from this subject and did not question Rick or any other witness about the February incident or refer to the incident in closing argument. Defendant later testified that he could not remember a specific incident with Rick in February of 1993 "because we had fights every weekend. I don't remember exactly anything about guns or anything." Defendant also testified that he had never been arrested or convicted of a felony before his arrest in this case.

**1.     The Evidence Was Probative of Defendant's Motive**

{9}     Defendant argues on appeal that Rick's testimony about the February incident should have been excluded under Rule 11-404(B) NMRA as impermissible evidence of an alleged "crime, wrong, or other act," offered to show only that Defendant had

5

a propensity for "violence with guns." The State argues that the evidence was admissible under Rule 11-404(B)(2) to show that Defendant had the motive and opportunity to commit the crimes in question. We review the admissibility of evidence under Rule 11-404(B) for an abuse of discretion. *E.g.*, *State v. Otto*, 2007-NMSC-012, ¶ 9, 141 N.M. 443, 157 P.3d 8. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

{10}  Under Rule 11-404(B)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). "[T]he issue . . . is whether there is a probative use of the evidence that is not based on the proposition that a bad person is more likely to commit a crime." *State v. Jones*, 1995-NMCA-073, ¶ 8, 120 N.M. 185, 899 P.2d 1139.

{11}  Rick's testimony was admissible under Rule 11-404(B)(2) to prove, at a

6

minimum, Defendant's motive for the crimes against Reynaldo and Danny. Defendant argued at trial that he was innocent and that Lolo was the only person in the car who had a gun that day. And before Rick testified, defense counsel cross-examined Danny about the feud, suggesting that the Navarettes (Defendant's family) had not been involved and that the feud was only between the Ortegas (Lolo's family) and the Ornelas family. Evidence that Defendant had pulled a gun on Rick Ornelas a few months before the shooting therefore was relevant to establish that Defendant had personally participated in the feud with the Ornelas family and to explain his violent actions toward Reynaldo and Danny. *See State v. Mireles*, 1995-NMCA-026, ¶ 6, 119 N.M. 595, 893 P.2d 491 (holding that evidence of a feud and previous violent behavior between two rival families was relevant to prove the defendant's motive and intent when the defendant and victim were associated with families on opposite sides of the feud); *cf. Otto*, 2007-NMSC-012, ¶ 12 ("[C]ontext may be a proper purpose under Rule 11-404(B)."). Thus, the evidence was admissible for a purpose other than to show a propensity for "violence with guns."

**2.     The Evidence's Probative Value Was Not Substantially Outweighed by the Danger of Unfair Prejudice**

{12}     We therefore must consider whether the evidence's "probative value [was] substantially outweighed by a danger of . . . unfair prejudice." Rule 11-403 NMRA;

7

*see also State v. Otto*, 2005-NMCA-047, ¶ 14, 137 N.M. 371, 111 P.3d 229 ("Because evidence that [the defendant] acted in accordance with a propensity would be exceedingly probative evidence if admitted, even permitted uses of 'bad acts' evidence are tempered in turn by the application of Rule 11-403 NMRA."). Defendant argues that the evidence was unfairly prejudicial because it "never had its day in court" and therefore could not be corroborated. The State concedes that the evidence was prejudicial but argues that it was "highly relevant," especially given Defendant's assertion that he was innocent.

{13}    We agree that the testimony about the February incident was prejudicial, but we cannot say that it was unfairly so. *See, e.g.*, *Otto*, 2007-NMSC-012, ¶ 16 ("[P]rejudice is considered unfair when it 'goes only to character or propensity.'" (quoting *State v. Ruiz*, 1995-NMCA-007, ¶ 12, 119 N.M. 515, 892 P.2d 962)). As explained above, the evidence of Defendant's prior altercation with Rich Ornelas had significant probative value to prove Defendant's motive based on his personal participation in the ongoing feud with various members of the Ornelas family. Given that Defendant's sole defense was that he was innocent, the evidence was highly relevant. *See Otto*, 2007-NMSC-012, ¶ 14 ("'Because a determination of unfair prejudice is fact sensitive, much leeway is given trial judges who must fairly weigh probative value against

8

probable dangers.'" (quoting *State v. Woodward*, 1995-NMSC-074, ¶ 19, 121 N.M. 1, 908 P.2d 231 (internal quotation marks omitted)). Accordingly, the district court did not abuse its discretion by admitting the challenged testimony.

**B.       Sufficient Evidence Supports Defendant's Convictions**

{14}    Defendant next argues that the State failed to introduce sufficient evidence to prove that he, not Lolo, shot Reynaldo and Danny. When reviewing for sufficient evidence to support a conviction, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). In making that determination, we view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (internal quotation marks and citations omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a defendant's] version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{15}    In challenging the sufficiency of the evidence, Defendant focuses on evidence

9

suggesting that Lolo, not Defendant, was the shooter. Defendant points to testimony that on the way to find Reynaldo, Lolo had asked an acquaintance if he "wanted to see a murder," that Lolo was the one who called Reynaldo over to the car before Reynaldo was shot, and that there was conflicting testimony about whether Defendant or Lolo had shot Reynaldo and Danny. Defendant also argues that expert testimony that Reynaldo was shot from a distance of more than two feet away was inconclusive about who actually pulled the trigger. And Defendant argues that the Ornelas family members' testimony should not be trusted because they were motivated to get a conviction for Reynaldo's death.

{16} Despite the evidence cited by Defendant, the jury heard sufficient evidence to conclude beyond a reasonable doubt that Defendant was the shooter. Two witnesses—including Danny, who was with Reynaldo by the open driver's side window of Lolo's car—testified that they saw Defendant reach down, pull out a gun, and start shooting from the passenger seat. The same two witnesses further testified that Lolo was in the driver seat of the car and that they never saw him with a gun. And both witnesses testified that they saw Lolo moved back in his seat when Defendant pulled out the gun and started firing. The jury was free to conclude from this testimony that Defendant, not Lolo, shot Reynaldo and Danny and to reject

10

Defendant's version of the facts.

{17} Other evidence also supported the jury's verdicts. There was expert testimony that the lack of gunshot residue on Reynaldo's clothing meant that he was shot from a distance of more than two to three feet, and numerous witnesses testified that Reynaldo was standing near the driver-side window with his hand on top of the car when the shooting began. Based on this evidence, the jury could have concluded that the shots must have been fired from the passenger seat, where Defendant was seated, because Lolo would have fired from too close to Reynaldo to explain the lack of gunshot residue on Reynaldo's clothing. The jury also could have viewed Defendant's testimony that he left for Denver the day after the shooting and eventually moved to Mexico, leaving his wife and children in Portales, as evidence that he fled to avoid capture for shooting Reynaldo and Danny. *See, e.g.*, *State v. Flores*, 2010-NMSC-002, ¶ 23, 147 N.M. 542, 226 P.3d 641 ("[E]vidence of flight . . . may prove consciousness of guilt."). The jury thus heard sufficient evidence to conclude that Defendant shot Reynaldo and Danny.

**C. The District Court Did Not Err By Refusing To Instruct the Jury on Voluntary Manslaughter**

{18} Defendant next argues that the district court improperly denied his request to instruct the jury on voluntary manslaughter as a lesser-included offense of first-degree

11

murder. "The propriety of jury instructions given or denied is a mixed question of law and fact" that we review de novo. *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

{19} Near the close of the evidence, the district court granted the State's request to instruct the jury on the lesser-included offense of second-degree murder, over Defendant's "adamant" objection. Defendant argued against the instruction, explaining that the State had focused its entire trial strategy on proving first-degree murder and that the jury should not be given the opportunity to convict Defendant of second-degree murder as a "compromise verdict." Having lost the argument, Defendant requested that the jury also be instructed on voluntary manslaughter as a lesser-included offense because there was evidence that Defendant may have been provoked. *See* UJI 14-220 NMRA ("The difference between second degree murder and voluntary manslaughter is sufficient provocation."). For reasons that are less than clear, the district court refused Defendant's requested instruction and instructed the jury only on first- and second-degree murder. The jury later found Defendant guilty of the greater offense.

{20} We previously have held that a district court's failure to provide a jury instruction on a lesser-included offense is reversible error when: "(1) the lesser

12

offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue." *State v. Jernigan*, 2006-NMSC-003, ¶ 21, 139 N.M. 1, 127 P.3d 537. In this appeal, only the second element is at issue; specifically, whether there was sufficient evidence of provocation to support a conviction of voluntary manslaughter. We therefore must determine "whether 'there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable doubt that Defendant committed the lesser included offense while still harboring a reasonable doubt that Defendant committed the charged offense.'" *Id.* ¶ 23 (quoting *State v. Hill*, 2001-NMCA-094, ¶ 17, 131 N.M. 195, 34 P.3d 139).

**{21}** Sufficient provocation is "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." UJI 14-222 NMRA. "It is settled law that the victim must be the source of the provocation." *State v Munoz*, 1992-NMCA-004, ¶ 12, 113 N.M. 489, 827 P.2d 1303 (citing *State v. Manus*, 1979-NMSC-035, ¶ 16, 93 N.M. 95, 597 P.2d 280, *overruled on other*

13

*grounds by Sells v. State*, 1982-NMSC-125, ¶ 10, 98 N.M. 786, 653 P.2d 162). "The appropriate inquiry is whether there is [sufficient] evidence that [the victim] individually provoked [the defendant]." *State v. Jim*, 2014-NMCA-089, ¶ 15, 332 P.3d 870 (citing *Manus*, 1979-NMSC-035, ¶ 16).

{22}     Defendant argues that there was sufficient evidence of provocation to support a jury instruction on voluntary manslaughter. Specifically, he points to his own testimony that, just before the shooting began, Danny and his cousin were approaching Lolo's car looking "very upset," and Lolo yelled, "Look out. They've got a piece." Defendant also points to evidence that Danny and his cousin "escalated the situation." Defendant testified that while he and Lolo were talking to Reynaldo, Danny and his cousin pulled up in their truck, got out, and walked towards Lolo's car, yelling at Lolo and Defendant to get out of the car so that "they could whip us or beat us." Defendant further testified that once Lolo yelled, "Look out," Defendant ducked down "with [his] head between [his] legs" and did not look up until the shooting had ended and Lolo had driven away.

{23}     The State argues that the evidence cited by Defendant was insufficient to support a jury instruction for voluntary manslaughter. While that evidence may have suggested that Defendant was frightened as a result of Danny yelling and approaching

14

the car, none of the evidence introduced at trial suggested that the victim of the homicide, Reynaldo, "individually provoked Defendant." *Jim*, 2014-NMCA-089, ¶ 15; *see also Manus*, 1979-NMSC-035, ¶ 16. In fact, even Defendant testified that Reynaldo "turned around" after "somebody . . . called him back" from Lolo's car. Under these circumstances, there was no evidence that Reynaldo did anything to "cause a temporary loss of self control" that would mitigate or lessen Defendant's culpability for killing him. UJI 14-222; *see also* UJI 14-220 ("Sufficient provocation reduces second degree murder to voluntary manslaughter."). The district court therefore did not err in denying Defendant's requested instruction on voluntary manslaughter.

**{24}** We also note that all of the purported evidence of provocation cited by Defendant came from his own testimony, in which he flatly denied shooting Reynaldo or Danny. It therefore would be incongruous to hold that Defendant's testimony provided sufficient evidence that he killed Reynaldo out of "anger, rage, fear, sudden resentment, terror or other extreme emotions," UJI 14-222, when that very testimony proclaimed that Defendant did not kill Reynaldo at all. *Cf. Manus*, 1979-NMSC-035, ¶ 22 (holding that an instruction on voluntary manslaughter was not required when, "to convict of voluntary manslaughter, the jury would have had to fragment the

15

testimony of [the defendant] to such a degree as to distort it"). Moreover, this is not a case in which we are concerned about an all-or-nothing approach by the State. *See, e.g.*, *State v. Meadors*, 1995-NMSC-073, ¶ 47, 121 N.M. 38, 908 P.2d 731 (Ransom, J., specially concurring) ("There is a legitimate concern that conviction of the greater offense may result because acquittal is an alternative that is unacceptable to the jury."). Indeed, it was Defendant who argued that "[t]his is an all-or-nothing case" and who implored the jury not to reach a "compromise" verdict on second-degree murder. The State requested the step-down instruction for second-degree murder, and the jury convicted Defendant of the greater offense of first-degree murder after deliberating for less than two hours. Under these circumstances, we cannot say that the district court erred by refusing to instruct the jury on voluntary manslaughter.

**D.      Defendant Knowingly, Voluntarily, and Intelligently Waived His Right To Remain Silent**

{25}    Defendant next argues that the district court erred when it partially denied his motion to suppress a video recording of his interrogation by two law enforcement officers shortly after his arrest in 2009. The district court permitted the State to show the trial jury the first eleven minutes of the video, which according to Defendant, consisted of a discussion of Defendant's "biographical information and his whereabouts between 1993 and 2009." On appeal, Defendant argues that the district

16

court should have suppressed all of the recording because he was not provided an interpreter and therefore did not understand the officers when they advised him of his *Miranda* rights. He also argues that the video should have been suppressed because the officers proceeded with the interrogation despite Defendant's repeated requests for an attorney before the interrogation began.

**{26}** We review the denial of a motion to suppress as a mixed question of law and fact:

> [W]e accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's ruling. The ultimate determination of whether a valid waiver of [*Miranda*] rights has occurred, however, is a question of law which we review de novo.

*State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024 (second alteration in original) (quoting *State v. Martinez*, 1999-NMSC-018, ¶ 15, 127 N.M. 207, 979 P.2d 718). To introduce statements obtained during a custodial interrogation, the State must establish by a preponderance of the evidence that the defendant made "a knowing, intelligent, and voluntary waiver" of the defendant's constitutional rights. *Gutierrez*, 2011-NMSC-024, ¶ 7 (quoting *Martinez*, 1999-NMSC-018, ¶¶ 13-14). Those rights include the right "to remain silent," to be advised "that any statement made by the accused may be used as evidence against him or her,"

17

and "to the presence of an attorney, either retained or appointed." *Gutierrez*, 2011-NMSC-024, ¶ 7 (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). We review the totality of the circumstances to determine if a defendant validly waived these rights. *Gutierrez*, 2011-NMSC-024, ¶ 7.

{27} In this case, the district court partially denied Defendant's motion to suppress after an evidentiary hearing at which the court watched the video and heard in-person testimony from Defendant and both of the officers who had conducted the interrogation. Based on the district court's firsthand observations of Defendant, both in the video and on the witness stand, the court specifically found that Defendant "understands and communicates effectively in the English language." The district court also noted that the video showed that the officers advised Defendant of his *Miranda* rights and responded when Defendant asked for clarification. The district court further found that Defendant was not credible and therefore disbelieved Defendant's assertion that he had asked for an attorney before the interrogation began. The district court concluded that Defendant knowingly, voluntarily, and intelligently waived his rights to remain silent and to counsel until he asked for a lawyer approximately eleven minutes into the interrogation.

{28} The district court's factual determinations, which are not challenged on appeal,

18

are supported by the evidence admitted at the hearing.  Based on those findings and the totality of the circumstances, we conclude that Defendant understood his *Miranda* rights and knowingly, intelligently, and voluntarily waived them for the first eleven minutes of his interrogation.  *See Gutierrez*, 2011-NMSC-024, ¶ 16 ("[T]he transcript and recording of [the child's] interrogation reveal that he had no difficulty comprehending the questions that were asked of him or effectively communicating his responses.  On this record, we fail to see any indication that [the child's] language abilities posed any obstacle to his understanding of his rights or the consequences of waiving them.").  Accordingly, permitting the State to show the jury the first eleven minutes of the video did not violate Defendant's *Miranda* rights.

**E.     The District Court Did Not Abuse Its Discretion When It Denied Defendant's Motion To Change Venue**

{29}     Defendant next argues that the district court erred when it denied his motion to change venue.  We review the denial of a motion to change venue for an abuse of discretion.  *State v. Rushing*, 1973-NMSC-092, ¶ 31, 85 N.M. 540, 514 P.2d 297.  "A [district] court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances of the case."  *State v. Lasner*, 2000-NMSC-038, ¶ 16, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted).

{30}     A district court has discretion to change venue based on a showing of either

19

presumed prejudice or actual prejudice to a party. *State v. House*, 1999-NMSC-014, ¶¶ 45, 47, 127 N.M. 151, 978 P.2d 967. Presumed prejudice arises when evidence shows that the community is so saturated with inflammatory publicity about the crime that it must be presumed that the trial proceedings are tainted. *Id.* ¶ 46. Actual prejudice must be established by questioning potential jurors during voir dire to determine whether there is such widespread and fixed prejudice within the jury pool that a fair trial in that venue would be impossible. *Id.* By proceeding to voir dire, a district court has implicitly rejected arguments favoring presumed prejudice. *See State v. Barrera*, 2001-NMSC-014, ¶ 16, 130 N.M. 227, 22 P.3d 1177. We will affirm a district court when its "venue determination is supported by substantial evidence in the record." *House*, 1999-NMSC-014, ¶ 32.

{31} We disagree that the district court abused its discretion in this case. Defendant filed a motion to change venue approximately one year before trial. As the only support for the motion, Defendant alleged that he would not be able to receive a fair trial due to the parties having "extensive and overwhelming contacts" in the community. The State argued in response that Defendant had failed to include an affidavit with his motion or to provide any other evidence to meet his burden of proving that a fair trial in the district would be a practical impossibility. The district

20

court later held a hearing and denied Defendant's motion, concluding that he had not shown by clear and convincing evidence that he would be unable to receive a fair trial in Roosevelt County. Given that Defendant offered no evidence to support his motion, we hold that the district court did not abuse its discretion by denying the motion. *Cf. State v. Wynne*, 1988-NMCA-106, ¶ 4, 108 N.M. 134, 767 P.2d 373 (holding that the district court did not abuse its discretion when it denied an oral motion to change venue that was based only on the "[m]ere arguments of counsel, unsupported by evidence").

**{32}** We also note that the record does not include evidence of actual prejudice in this case. The district court questioned the jury pool at voir dire about whether any of the potential jurors had prior knowledge of the case or would be unable to be fair and impartial. Fourteen of the eighty-seven members of the jury pool responded that they had heard something about the case. However, as this Court recognized in *Barrera*, "Exposure of venire members to publicity about a case by itself does not establish prejudice or create a presumption of prejudice." 2001-NMSC-014, ¶ 18 (internal quotation marks and citation omitted). The record confirms that only one of these individuals was selected to the jury, and only after she was questioned in chambers about her ability to be fair and impartial. In short, nothing in the record

21

suggests that Defendant was unable to obtain a fair trial or that the district court abused its discretion in denying the motion to change venue.

**F.      Defendant Did Not Receive Ineffective Assistance of Counsel**

**{33}**      Defendant next argues that he received ineffective assistance of counsel during his trial based on two theories.  First, Defendant argues that defense counsel failed to question potential jurors during voir dire about their exposure to press coverage of the shootings and the trial.  Second, Defendant argues that defense counsel should not have been permitted to represent Defendant in this matter due to a conflict of interest. To establish a prima facie claim of ineffective assistance of counsel, Defendant must show (1) that defense counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  *See State v. Rivas*, 2017-NMSC-022, ¶ 23, 398 P.3d 299.  We will not find that defense counsel's performance was deficient if it can be viewed as a "plausible or rational strategy or tactic."  *Id.*  We review a claim of ineffective assistance of counsel de novo.  *Id.*

**1.      Defense Counsel Did Not Fail To Question Jurors About Their Media Exposure**

**{34}**      Defendant first argues that defense counsel was ineffective by failing to question potential jurors about their media exposure during voir dire.  This argument is not supported by the record and therefore lacks merit.  As previously noted, the

22

district court asked the entire panel of prospective jurors if they had seen or heard anything about the case, including from media coverage. Fourteen panel members answered affirmatively by raising their hands. Of those fourteen individuals, five were struck for cause without further questioning, four were struck after being questioned about their knowledge of the case, and one was seated on the jury after she gave assurances that she could be fair and impartial despite having read about the case in the newspaper. The remaining four panel members who raised their hands were not interviewed because the jury was selected before their numbers were called.

{35}   We therefore disagree as a factual matter that defense counsel failed to question potential jurors about whether they had been exposed to media coverage. To the contrary, defense counsel ensured that no member of the panel who indicated having knowledge about the case was selected to the jury without confirming that he or she could be fair and impartial. Nothing more was required. *Cf. State v. Santillanes*, 2000-NMCA-017, ¶ 22, 128 N.M. 752, 998 P.2d 1203 (holding that counsel was not ineffective for failing to move a second time for a change of venue during voir dire when prospective jurors were questioned about their ability to be impartial and "[t]hose who indicated they had prejudged the case were excused for cause"), *rev'd on other grounds*, 2001-NMSC-018, 130 N.M. 464, 27 P.3d 456. Because defense

23

counsel's performance was not deficient, Defendant's ineffective assistance of counsel claim fails. *See, e.g.*, *State v. Reyes*, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948 ("Failure to prove either prong of the test defeats a claim of ineffective assistance of counsel.").

## 2. Defense Counsel Did Not Have an Actual Conflict of Interest in This Case

**{36}** Defendant next argues that defense counsel was constitutionally ineffective because he had a conflict of interest and therefore should not have been permitted to represent Defendant in this case. We previously have recognized that "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Rael v. Blair*, 2007-NMSC-006, ¶ 11, 141 N.M. 232, 153 P.3d 657 (alteration omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). To prevail on such a claim, "A defendant must show that counsel, 'actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.'" *Rael*, 2007-NMSC-006, ¶ 11, (quoting *Strickland*, 446 U.S. at 692) (internal quotation marks and citation omitted). "[T]o invoke such a presumption of prejudice, there must be an actual, active conflict that adversely affects counsel's trial performance; the mere possibility of a conflict is insufficient." *State v. Martinez*, 2001-NMCA-059, ¶ 24, 130 N.M. 744, 31 P.3d 1018.

{37} Defendant has not shown, nor even argued, that defense counsel had an actual, active conflict in this case that adversely affected his performance at trial. Instead, Defendant effectively argues that defense counsel had a per se conflict because of his role as the former Ninth Judicial district attorney from 1990 to 2002, a period that included the time of Reynaldo's death and the unsuccessful prosecution of Lolo for Reynaldo's murder. Defendant cites no authority recognizing a claim based on a per se conflict of interest, rather than an actual conflict, and we therefore need not consider this issue any further. *See, e.g.*, *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 ("We remind counsel that we are not required to do their research, and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority." (citations omitted)).

{38} To avoid this issue coming before us in a post-conviction proceeding, however, we observe that the record in this case strongly suggests that defense counsel's role as the former district attorney did not pose an actual, active conflict in this case. Early in defense counsel's representation of Defendant, the State moved to disqualify him under Rule 16-111(A)(2) NMRA because of his role as the former district attorney. *See id.* ("[A] lawyer who has formerly served as a public officer or employee of the government . . . shall not otherwise represent a client in connection with a matter in

25

which the lawyer participated personally and substantially as a public officer or employee . . . ."). In response, defense counsel flatly denied having "anything to do with this case, this investigation" or with Lolo's prosecution, all of which would have been overseen by the deputy district attorney who "was in charge of Roosevelt County." The State offered no evidence to the contrary.

**{39}** Additionally, Defendant informed the district court that he wanted defense counsel to represent him and later filed a written, signed statement confirming that he understood defense counsel's history, that he understood his right to have another lawyer appointed to represent him, and that he waived any conflict. The district court denied the State's motion, finding that the State had not shown that defense counsel had participated "personally nor substantially" in the matter and that Defendant, having waived any conflict, should be represented by counsel of his choice. Under these circumstances, we doubt that defense counsel's role as the former district attorney, on its own, posed an "actual, active conflict," much less a conflict that "adversely affect[ed his] trial performance." *Martinez*, 2001-NMCA-059, ¶ 24.

**G.     There Was No Cumulative Error in This Case**

**{40}** For his last argument, Defendant contends that his conviction must be overturned due to cumulative error. "The doctrine of cumulative error applies when

multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61. Because we have determined that no error occurred, the doctrine of cumulative error is not implicated. *See State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 ("Where there is no error to accumulate, there can be no cumulative error." (internal quotation marks, citation, and alteration omitted)).

## III. CONCLUSION

{41} For the reasons discussed above, Defendant's convictions are affirmed.

27

{42}    **IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**JUDITH K. NAKAMURA, Chief Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**

_____

**GARY L. CLINGMAN, Justice**

28