827 P.2d 1303

STATE of New Mexico,
Plaintiff–Appellee,

v.

Geronimo MUNOZ, Defendant–
Appellant.

No. 12652.

Court of Appeals of New Mexico.

Jan. 14, 1992.

Certiorari Denied Feb. 21, 1992.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Robert J. Jacobs, Taos, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals from his convictions under three counts for separate criminal offenses. A jury found defendant guilty of murder in the second degree of J.A. Hatfield (Hatfield), attempted murder in the second degree of Lila Hatfield, and attempted murder in the first degree of Ralph Hernandez. He argues eleven issues in his brief-in-chief. Other issues raised in the docketing statement but not briefed are deemed abandoned. *See State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct. App.1985).

Only one of the issues raised by defendant merits publication, so only that part of the opinion discussing that issue will be formal and published. The issue meriting publication is whether the trial court erred in refusing defendant's requested jury instruction on the lesser-included-offense of voluntary manslaughter in connection with the death of Hatfield. We hold that defendant's testimony provided a factual basis for such an instruction and thus conclude that the trial court committed reversible error in denying defendant's requested instruction. The second-degree murder conviction under count 1 is therefore reversed

and the case is remanded for a new trial on that count. For the reasons stated in the unpublished portions of this opinion, we affirm the other two convictions with respect to all other issues raised by defendant.

BACKGROUND

During the late night or early morning of March 15–16, 1989, defendant went to the home of Hatfield and Lila Hatfield, his wife, where he shot and killed Hatfield. As defendant was leaving the Hatfield residence, he ran over Lila Hatfield with his pickup truck, severely injuring her. Defendant then shot Ralph Hernandez in both legs and left him in a secluded place. In addition to the criminal offenses for which he was convicted, defendant was charged with aggravated burglary for his entry into the Hatfield residence and aggravated assault for allegedly assaulting his wife, Donna Munoz, with a firearm. Additional facts and background are included in our discussion.

Defendant testified at trial, admitting that he committed the acts in question. However, his defense theory was that he was unable to form the specific intent required, resulting from certain events that occurred from March 13 through March 16. In support of this defense, he introduced the testimony of several expert witnesses who testified that, during the events, defendant was suffering from a brief reactive psychosis. The jury found defendant not guilty of the aggravated burglary and aggravated assault. Defendant was sentenced, and this appeal followed.

DISCUSSION

■ The critical difference between murder and voluntary manslaughter is the existence of legally sufficient provocation. SCRA 1986, 14–220. A homicide is murder if done without what the law considers to be sufficient provocation. However, if the homicide occurs as a result of what the law deems as sufficient provocation, the homicide is considered voluntary manslaughter. *Id.* A trial court must instruct the jury on voluntary manslaughter if the defense requests such an instruction and the instruction is warranted under the facts of the case. *State v. Reynolds,* 98 N.M. 527, 650 P.2d 811 (1982); *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979); *State v. Marquez,* 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981).

SCRA 1986, 14–222, defines sufficient provocation as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." This rule also provides that "[t]he provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Id.* The required provocation is insufficient "if an ordinary person would have cooled off before acting." *Id.* Whether a particular set of circumstances is sufficient provocation is generally a question for the jury to decide. *Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982). Thus, our task as a reviewing court is to determine whether the jury could have determined that defendant's actions were the result of legally sufficient provocation based on the evidence presented. *See State v. Manus; Smith v. State,* 89 N.M. 770, 558 P.2d 39 (1976); *State v. Marquez.*

Defendant testified at length concerning the events of March 13 through 16. What follows is a summary of his testimony. Defendant and Donna Munoz were married in 1980. He was eighteen years old at the time; she was fifteen years old. She had run away from home a few months earlier. She told defendant that she was running away because Hatfield, who was her stepfather, had attempted to touch her sexually. Throughout the marriage, Donna Munoz continually maintained that Hatfield had only tried to touch her but had not succeeded.

During the evening hours of March 15, 1989, Donna Munoz told defendant that she wanted to talk to him. They left their son, Christopher, in the spare bedroom, watching television, and went into the living room. There, Donna Munoz spoke generally about her family and specifically about events that had occurred when she was growing up. Ultimately, she informed de-

fendant that, beginning when she was nine years old, Hatfield, as well as her uncle, Ralph Hernandez, and her brother, Fabian McClean, had sexually molested her. The acts of molestation occurred on many occasions, and included anal and vaginal intercourse, as well as oral sex, for which the men gave her money. She told defendant that she had informed other family members of these occurrences, including her mother. They had responded by telling her to be quiet about the molestations so that the family could stay together. As she revealed these events to defendant, Donna Munoz was screaming and crying hysterically.

Becoming extremely upset as he heard these disclosures, defendant picked up his rifle and went to his in-laws' house, located a few miles away. He testified that he went there because he wanted to talk to Hatfield. He took his rifle with him because he was afraid of Hatfield. He had been to the house before and knew that Hatfield kept guns there in the spare bedroom.

Upon arriving at the Hatfield residence, defendant entered the house uninvited, went into the bedroom, and awakened Hatfield and Lila Hatfield. He told them of his wife's revelations and that they had ruined his and his wife's lives. Hatfield denied everything, but Lila Hatfield admitted that her daughter had come to her for help and that she had refused her plea. At that point, Hatfield gave Lila Hatfield a "go-to-hell look" and said he wanted a cigarette. Defendant said no, that he wanted to talk. Hatfield stood up and walked toward defendant. Defendant loaded his rifle. Both men were yelling. Hatfield, who appeared to be very angry, stared into defendant's eyes, then stepped back and started walking out of the bedroom. Defendant testified that, as he was losing Hatfield in the dark, the gun went off.

■ Based on these facts, defendant requested an instruction on the lesser-included offense of voluntary manslaughter in connection with the resulting death of Hatfield. The trial court refused the instruction, holding that *State v. Manus* required that, to establish voluntary manslaughter, a defendant must show that he was pro-

voked by the victim. The trial court stated that there was sufficient evidence by which a jury could find provocation. Nevertheless, it concluded that defendant was not entitled to the instruction because the provocation in this appeal came, not from the victim, but from the disclosures made by Donna Munoz to defendant. We disagree with the trial court's view of the law.

■ It is settled law that the victim must be the source of the provocation. *State v. Manus.* In applying this rule, however, it is important to distinguish between the actual provocation, which in this case consisted of Hatfield's sexual molestations of Donna Munoz, and the manner in which defendant learned of the provocation, which consisted of Donna Munoz's disclosures. To establish manslaughter, both of these must occur before the killing. As the facts of this appeal illustrate, the provocation and the disclosure of the events constituting the provocation may occur at different times. However, as our supreme court has observed, " 'a sudden disclosure of an event (the event being recognized by the law as adequate) may be the equivalent of the event presently occurring.' " *Sells v. State*, 98 N.M. at 788, 653 P.2d at 164 (quoting Charles E. Torcia, 2 *Wharton's Criminal Law* § 156 (14th ed. 1979)); *see also* F. Lee Bailey & Henry B. Rothblatt, 1 *Crimes of Violence: Homicide and Assault*, § 565 (1973); Wayne R. La Fave & Austin W. Scott, Jr., 2 *Substantive Criminal Law* § 7.10(b) (1986). Thus, we believe the trial court erred in determining that, as a matter of law, Hatfield had done nothing that was legally sufficient to provoke defendant.

The state does not argue that Hatfield's sexual abuse of Donna Munoz would not be a legally sufficient provocation, nor does it contend that the trial court correctly applied the holding of *Manus.* Instead, the state argues that defendant's testimony demonstrates that defendant killed Hatfield because he thought Hatfield was going to get a gun. Thus, the state maintains, defendant's own actions caused the true provocation—Hatfield's attempt to get a gun. We disagree.

■ We recognize that a defendant cannot pose a threat to the victim and then

rely on the victim's response as a legal provocation. *See, e.g., State v. Manus; State v. Marquez.* In the present case, however, defendant's provocation argument was based on Hatfield's alleged sexual mistreatment of defendant's wife, rather than on the possibility Hatfield was going to get a gun. We thus hold that defendant was entitled to have the jury instructed on voluntary manslaughter in connection with the death of Hatfield.

## CONCLUSION

Based on our discussion and the unpublished portions of this opinion, we (1) reverse and remand for a new trial on count 1, involving the death of J.A. Hatfield; and (2) affirm defendant's convictions for the attempted second-degree murder of Lila Hatfield and the attempted first-degree murder of Ralph Hernandez.

IT IS SO ORDERED.

HARTZ and BLACK, JJ., concur.