The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: January 22, 2024

**NO. S-1-SC-39294**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**ISAIAS LOBATO-RODRIGUEZ,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Jarod K. Hofacket, District Judge**

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**ZAMORA, Justice.**

{1}     Defendant Isaias Lobato-Rodriguez was convicted by a jury of second-degree murder. The Court of Appeals vacated his conviction on the ground that the prosecutor, by commenting in the opening statement on Defendant's failure to speak to police, had violated Defendant's right to remain silent under the Fifth and Fourteenth Amendments to the United States Constitution, and that such violation was not harmless error. *State v. Lobato-Rodriguez*, A-1-CA-39409, mem. op. ¶¶ 3, 5 (N.M. Ct. App. Mar. 9, 2022) (nonprecedential). While we agree that the prosecutor's comment violated Defendant's constitutional rights, we conclude that the error was harmless in the context of the trial as a whole. Accordingly, we reverse the Court of Appeals.

**I.     BACKGROUND**

{2}     Law enforcement found the body of Connie Lopez inside a van that had crashed into a fence along a remote stretch of desert highway. She was still strapped into the driver's seat, and the engine was running. A pet dog sat in her lap. A belt was wrapped around her neck.

{3}     Defendant approached law enforcement at the scene on foot. He immediately and without any prompting admitted to police that he had killed Lopez. He told law

enforcement that he had to kill her because she was going to kill him and kidnap and kill his daughter. He further claimed that other people were hiding in the bushes. An exhaustive search found no other people. They arrested Defendant.

{4} During opening statement, the prosecutor recounted these events, adding that Defendant invoked his right to remain silent after his arrest. The prosecutor said:

> That night after the crime scene was more or less processed, Agent Mascorro then went to the Deming State Police office which is where Mr. Lobato-Rodriguez had been taken from that scene. He got brought back here to Deming. He certainly wasn't free to leave—he was the suspect. I mean, that's it. So Agent Mascorro did engage in conversation with Mr. Lobato-Rodriguez. Mr. Lobato-Rodriguez asserted his rights to remain silent.

Defense counsel immediately objected and requested a mistrial. The district court admonished the prosecutor not to make any further comment on Defendant's silence but denied the motion for mistrial, finding that the isolated comment was unlikely to be a significant factor in the jury's verdict given the evidence expected at trial. The prosecutor made no further comment on Defendant's silence for the remainder of the four-day trial.

{5} After the State rested, Defendant testified in his own defense. He described how he killed Lopez: he took off his belt and wrapped it around Lopez's neck from the back seat of the van, causing her to veer off the road. Defendant testified that he

2

held the belt around Lopez's neck for "twenty minutes or more," then squeezed the belt and tied it in a knot, killing her.

{6} The defense—exclusively one of mitigation, not denial—rested on Defendant's claim that Lopez had provoked him into killing her. Defendant asserted the following facts to establish provocation. Lopez, a former immigration law paralegal, ran a private business providing services to migrant workers in Florida. Defendant hired Lopez to drive him from his home in Florida to Agua Prieta, Mexico, where he intended to retire after receiving a settlement from a workplace injury. Lopez helped Defendant withdraw his money, including several thousand dollars in cash, by translating for him at the bank. Once on the road, Defendant became suspicious that Lopez intended to rob him, or worse.

{7} Defendant first became suspicious of Lopez when they stayed at a motel in El Paso. He noticed four men there who "looked suspicious" and saw Lopez speaking to someone on the phone. He called his daughter and told her that he did not wish to continue the journey with Lopez. He walked to a restaurant and asked someone to call 911. Firefighters responded to the call. A firefighter testified that Defendant seemed agitated and that Defendant said he wanted to be dropped off at a border crossing. Firefighters took Defendant's vitals, calmed him down, and canceled the

call for police assistance. Lopez asked Defendant to get back in the van so that she could "get[] him to his destination." Defendant got back into the van.

{8} After leaving El Paso, Defendant began to suspect that the men from the hotel were following him. A white pickup truck passed the van twice, and Defendant saw a man inside the pickup gesture at Lopez as if to wave her forward. He thought that these men might rob and kill him and harm his daughter.

{9} While on the highway, Lopez pointed to a mountain in the distance and said, "Look how pretty that looks. I would like to walk around there. And look, because this may be the last time you see it in your life." Defendant interpreted this statement as a threat to his life, but he calmed down, drank water, and continued the journey with Lopez. At some point, the white pickup truck reappeared. Defendant then decided to strangle Lopez because he thought it was the only way he could escape. On cross-examination, Defendant admitted that Lopez did not directly threaten to hurt him or his family, nor did she have a weapon.

{10} At the close of trial, the district court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter. The instructions on second-degree murder and voluntary manslaughter were identical but for the voluntary manslaughter element of provocation. The district court instructed the jury that "[t]he difference between second degree murder and voluntary manslaughter is

4

sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked . . . [, but i]n the case of voluntary manslaughter the defendant kills after having been sufficiently provoked." *See* UJI 14-220 NMRA. The district court also instructed the jury on the definition of "sufficient provocation" as follows:

> "Sufficient provocation" can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition. The "provocation" is not sufficient if an ordinary person would have cooled off before acting.

*See* UJI 14-222 NMRA. The jury found Defendant guilty of second-degree murder.

{11} Defendant raised five issues on appeal. The Court of Appeals granted Defendant a new trial based on its determination of a single issue, which was that the prosecutor's comment on silence was not harmless error. *Lobato-Rodriguez*, A-1-CA-39409, mem. op. ¶ 5. The Court of Appeals did not analyze the comment in context of all of the evidence presented at trial but nevertheless concluded that reversal was required because Defendant's "credibility was crucial since he testified at trial and the element of provocation was at issue." *Id.* The State petitioned this Court for a writ of certiorari on the single issue of whether "the Court of Appeals err[ed] by functionally treating a prosecutor's comment on the right to remain silent

as per se harmful error when the statement did not affect the verdict." We granted certiorari.

## II.   DISCUSSION

### A.   Standard of Review

{12}   Because prosecutorial comment on a defendant's silence "raises substantial questions of constitutional law," our review is de novo. *State v. Gutierrez*, 2007-NMSC-033, ¶ 10, 142 N.M. 1, 162 P.3d 156. "Where a defendant has made a proper objection at trial, the appellate court determines whether the prosecution commented on the defendant's protected silence, and if so, reverses the conviction unless the State can demonstrate that 'the error was harmless beyond a reasonable doubt.'" *State v. DeGraff*, 2006-NMSC-011, ¶ 22, 139 N.M. 211, 131 P.3d 61 (citation omitted).

{13}   Under this constitutional harmless error standard, we will deem the error "harmless only if we conclude that there is no reasonable possibility the error contributed to the jury's decision to convict." *State v. Tollardo*, 2012-NMSC-008, ¶ 45, 275 P.3d 110. While "[t]he jury verdict [is] not automatically . . . afforded deference when a constitutional error has infected the trial," *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 30, 136 N.M. 309, 98 P.3d 699, neither is the verdict

6

automatically reversed. *See Gutierrez*, 2007-NMSC-033, ¶ 19 ("We decline to adopt a rule of automatic reversal for every prosecutorial comment on silence.").

{14} Instead, the focus of our inquiry is exclusively on "the likely impact of the error on the jury's verdict." *Id.* ¶ 18 (quoting *Alvarez-Lopez*, 2004-NMSC-030, ¶ 32). We examine the "basis on which the jury *actually rested* its verdict. The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 27 (internal quotation marks omitted) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). As such, "harmless error review necessarily requires a case-by-case analysis." *Tollardo*, 2012-NMSC-008, ¶ 44.

{15} We emphasize that "constitutional error cannot be deemed harmless simply because there is overwhelming evidence of the defendant's guilt." *Alvarez-Lopez*, 2004-NMSC-030, ¶ 32. The evidence of a defendant's guilt apart from the error "may often be relevant . . . since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings; but such evidence . . . can never be the singular focus of the harmless error analysis." *Tollardo*, 2012-NMSC-008, ¶ 43. Thus, we will not conclude that a constitutional error was harmless simply because "the right result was reached." *Id.* ¶ 42 (internal

7

quotation marks omitted) (quoting *State v. Barr*, 2009-NMSC-024, ¶ 57, 146 N.M. 301, 210 P.3d 198). If there is a reasonable possibility that the error contributed to the verdict, then reversal is required. *Id.* ¶ 45.

**B.     The Prosecutor Violated Defendant's Constitutional Rights by Commenting on Defendant's Post-Arrest Silence**

{16}     The first step in constitutional harmless error analysis is determining whether there was an error that infringed upon the defendant's constitutional rights. *See, e.g.*, *Alvarez-Lopez*, 2004-NMSC-030, ¶¶ 6, 24-25 (determining that there was a constitutional error before applying harmless error analysis). Although the State concedes that the prosecutor's statement was error, we conduct our own analysis of this question. *See, e.g.*, *State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130 ("[W]e are not bound by the State's concession [in a criminal appeal], and we independently assess Defendant's claims.").

{17}     When assessing a prosecutor's statement that could be construed as a comment on silence, "New Mexico courts . . . consider 'whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment' on the accused's exercise of his or her right to remain silent." *DeGraff*, 2006-NMSC-011, ¶ 8 (citation omitted). There is no ambiguity about the nature of the statement in this case. The prosecutor informed the jury that after Defendant was arrested, he "asserted his rights to remain silent."

8

This statement was a direct comment on Defendant's exercise of his right to remain silent after arrest and, as such, it was clearly constitutional error. *See id.* ¶ 12 (recognizing that "[t]he Fifth Amendment protects a defendant's decision not to testify" and "due process guaranteed by the Fifth Amendment protects post-*Miranda* silence"); *see also, e.g.*, *State v. McDowell*, 2018-NMSC-008, ¶ 1, 411 P.3d 337 ("For decades, prosecutors have been prohibited from commenting on or eliciting testimony about a defendant's exercise of his or her right to remain silent."); *Gutierrez*, 2007-NMSC-033, ¶ 11 ("[W]e have long held that prosecutorial comment on a defendant's exercise of his or her right to remain silent violates a defendant's rights under the Fifth Amendment to the federal Constitution, as applied to the states through the Fourteenth Amendment.").

{18}     We note that in addition to the violation of Defendant's constitutional right to remain silent, the prosecutor's comment here was improper "as a matter of New Mexico evidentiary law." *McDowell*, 2018-NMSC-008, ¶ 4. Rule 11-403 NMRA allows courts to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . misleading the jury." Silence is generally inadmissible because no matter when the silence occurred, it "is often too ambiguous to have great probative force and may be given improper weight by a jury." *McDowell*, 2018-NMSC-008, ¶ 4 (internal quotation marks and citation

omitted). Post-*Miranda* silence is even less probative than silence that occurs at other stages. That is because the *Miranda* warning—which informs the defendant that he or she has a "right to remain silent[ and] that anything he says may be used against him"—implies that "silence will carry no penalty." *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976); *see also DeGraff*, 2006-NMSC-011, ¶ 12. "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is *insolubly ambiguous* because of what the State is required to advise the person arrested." *Doyle*, 426 U.S. at 617 (emphasis added).

{19} There is no justification for the prosecutor's comment in this case. As explained above, the prosecutor's statement that Defendant "asserted his rights to remain silent" was a violation of Defendant's Fifth and Fourteenth Amendment rights and was irrelevant to any issue at trial. Prosecutors should be aware that they risk mistrial, "including in cases in which the evidence supporting a conviction is very strong, if they make inappropriate and constitutionally violative mention of a defendant's postarrest silence." *Gutierrez*, 2007-NMSC-033, ¶ 24; *see also, e.g.*, *State v. Costillo*, 2020-NMCA-051, ¶¶ 21-22, 475 P.3d 803 (discussing the fact that retrial may be barred by double jeopardy in cases where prosecutorial comment on silence meets the standard for severe prosecutorial misconduct set forth in *State v.*

*Breit*, 1996-NMSC-067, ¶ 32, 122 N.M. 655, 930 P.2d 792). Such statements may also violate the rules of professional conduct. *See* Rule 16-304(E) NMRA ("A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence."); *see also, e.g.*, *DeGraff*, 2006-NMSC-011, ¶ 17 (noting that the prosecutor's comments on silence "may . . . have constituted prosecutorial misconduct by encouraging the jury to convict Defendant on improper grounds").

{20}     Although we conclude that the prosecutor's comment in this case was patently improper and violated Defendant's constitutional rights, we nevertheless must determine the proper remedy for that violation through the lens of harmless error review. *See Gutierrez*, 2007-NMSC-033, ¶ 19 ("We decline to adopt a rule of automatic reversal for every prosecutorial comment on silence . . . [because] existing precedent . . . requires application of a harmless error standard."). We now address the effect of the prosecutor's improper comment on the jury's verdict in this case.

**C.     Under the Unique Circumstances of This Case, the Prosecutor's Comment Was Harmless**

{21}     To determine whether the prosecutor's error was harmless, we examine "all of the circumstances surrounding the error." *Tollardo*, 2012-NMSC-008, ¶ 43. The relevant circumstances will vary "depending upon the facts of the particular case" but may include the extent to which the error was emphasized at trial; the role of the

error in the prosecution's overall case; and—although it is not dispositive—"evidence of a defendant's guilt separate from the error." *Id.* In other words, we examine the error in the context of the trial as a whole to determine whether there is a reasonable possibility that it contributed to the jury's decision to convict.

{22} We first consider the procedural context. The prosecutor's comment was an isolated remark at the beginning of trial that, after admonishment by the district court, was not repeated or emphasized. However, even if a comment on silence is "but a brief part of the entire trial," it is not necessarily harmless. *McDowell*, 2018-NMSC-008, ¶ 24. And a comment on silence, even if isolated, may be particularly prejudicial when it is made in opening statement. *Gutierrez*, 2007-NMSC-033, ¶ 20 ("The opening statement holds a uniquely important place in the trial because it is the lens through which the jury views and evaluates the entire trial. Therefore, the prosecutor must take special care to refrain from improper comments, including comments on a defendant's silence."). But the procedural context does not resolve the question whether the error was harmless. Rather, we consider additional circumstances surrounding the error, such as the relative importance of the error to the prosecution's overall case. *Id.* ¶ 21.

{23} To determine the relative importance of the error to the prosecution's overall case, we look to the disputed issues before the jury. The only material issue in this

12

case was whether Defendant acted in response to sufficient provocation, which is the element that distinguishes second-degree murder from voluntary manslaughter.[1] *Compare* UJI 14-210 NMRA (second-degree murder instruction) *with* UJI 14-220 (voluntary manslaughter instruction); *see also State v. Jernigan*, 2006-NMSC-003, ¶ 18, 139 N.M. 1, 127 P.3d 537 ("[V]oluntary manslaughter is second-degree murder committed with sufficient provocation."). By returning a verdict of second-degree murder, the jury determined that Defendant did not act in response to sufficient provocation.

{24} Because only provocation was at issue, our harmless error inquiry must focus on the effect the prosecutor's error had on the jury's determination of that element. The question before this Court is whether there is a reasonable possibility that the prosecutor's comment on silence influenced the jury's finding of insufficient provocation in light of the evidence presented at trial. To answer this question, we consider the inferences that the jury may have drawn from the comment on silence and the evidence before the jury that Defendant acted in response to provocation.

---

[1]Because the jury acquitted Defendant of first-degree murder when it returned a verdict of guilty on the lesser included offense of second-degree murder, the distinction between first- and second-degree murder is not relevant to our analysis. And because Defendant admitted to killing Lopez, the potential for a not guilty verdict is not relevant to our analysis.

{25} In general, a prosecutor's comment on a defendant's pretrial silence may impermissibly imply guilt from the fact that the defendant did not supply evidence of his or her own innocence in the form of an exculpatory statement to police. "This [is] the classic contrast—the innocent speak, while the guilty remain silent." *McDowell*, 2018-NMSC-008, ¶ 22. And if the defendant testifies at trial, a prosecutor's comment on a defendant's pretrial silence may impermissibly imply that the defendant fabricated a false but exculpatory version of events during the pretrial silence. *See, e.g.*, *United States v. Hale*, 422 U.S. 171, 172-73 (1975) (holding that it was improper for the prosecutor to ask the defendant "why he had not given the police his alibi when he was questioned shortly after his arrest"); *see also DeGraff*, 2006-NMSC-011, ¶¶ 10, 17 (holding that it was improper for the prosecutor to imply guilt from a three-week period of silence between that attack and the defendant coming forward and providing an exculpatory statement to police).

{26} However, in this case, the jury could not reasonably have inferred that Defendant's silence was evidence that he was hiding the truth or buying time to invent a false story of provocation because Defendant spoke to police before invoking his right to remain silent and, importantly, his initial statements were consistent with his trial testimony. Defendant told the jury, as he had told police, that

he felt he had to kill Lopez to protect his own life and the life of his daughter. Under these circumstances, there is no logical inference from Defendant's post-arrest silence that he attempted to hide or fabricate a story of provocation: his story of provocation emerged immediately and remained consistent through trial.

{27} We also examine the evidence before the jury that Defendant acted in response to provocation. In this case, we conclude that the prosecutor's comment did not affect the jury's verdict because Defendant's testimony—even if fully credited— could not establish sufficient provocation as a matter of law. Defendant's testimony may have established that he subjectively feared for his life, but it did not establish that his fear was objectively reasonable. "By definition, provocation includes an objective component . . . . The question of provocation is not solely a subjective one." *State v. Taylor*, 2000-NMCA-072, ¶ 27, 129 N.M. 376, 8 P.3d 863.

{28} The jury was instructed that sufficient provocation could be "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions," viewed from the objective standard of "an ordinary person of average disposition." UJI 14-222. "The provocation must be such as would affect the ability to reason and to cause a temporary loss of self-control in" such person. *Id.* And "if an ordinary person would have cooled off before acting," then "[t]he 'provocation' is not sufficient." *Id.*

15

{29} Defendant's testimony met none of these criteria. Defendant testified that he was provoked into killing Lopez after he came to believe that Lopez was conspiring with a group of "suspicious" men to harm him and his daughter. The only facts that Defendant provided to substantiate this belief were that Lopez made a phone call to an unknown person, the men appeared to be following them in a pickup truck, and one of the men made a hand signal at Lopez on the highway. These facts could not establish that Lopez was connected to the unidentified men in any manner, much less that they shared a criminal intent to harm Defendant. Lopez's actions[2] of speaking on the phone and passively sharing the road with another vehicle would not cause a reasonable person to experience "anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14-222.

{30} Nor would Lopez's words cause such extreme emotion. Defendant testified that he was provoked by Lopez's advice to look at a distant, "pretty" mountain, "because this may be the last time you see it in your life." Given that Defendant was on his way to a new home in a foreign country, Lopez's statement was innocuous. In any event, "words alone are not enough to arouse the passions such that murder

---

[2]We assess the evidence of provocation in light of Lopez's acts alone and do not consider the acts of third parties. The victim must be the source of the provocation, so the appropriate inquiry is whether there is evidence that the victim individually provoked the defendant. *State v. Jim*, 2014-NMCA-089, ¶ 15, 332 P.3d 870.

16

is reduced to manslaughter." *State v. Stills*, 1998-NMSC-009, ¶ 36, 125 N.M. 66, 957 P.2d 51.[3]

{31}     Finally, even if the jury had determined that Lopez's words and actions caused Defendant to experience an extreme emotional state, an alleged "'provocation' is not sufficient if an ordinary person would have cooled off before acting." UJI 14-222. Defendant's testimony that he held the belt around Lopez's neck for more than twenty minutes indicates that he had ample time to cool off before killing her. *Cf. State v. Romero*, A-1-CA-37979, mem. op. ¶ 21 (N.M. Ct. App. Aug. 5, 2021) (nonprecedential) (holding that a twenty-minute period provided "more than enough time" for the defendant to cool off before killing the victim). Not only did Defendant have ample time, but he had gained control over any apparent threat: Lopez was confined by her seatbelt and presented no physical danger to Defendant in those twenty minutes.

---

[3]In limited circumstances, "informational words, as distinguished from mere insulting words," can establish sufficient provocation. *Sells v. State*, 1982-NMSC-125, ¶ 7, 98 N.M. 786, 653 P.2d 162. That is, the "sudden disclosure of an event (the event being recognized by the law as adequate) may be the equivalent of the event presently occurring." *Id.* (internal quotation marks and citation omitted). In this case, Lopez's statement did not suddenly disclose any event, so this exception does not apply.

{32}     In sum, Defendant did not meet his burden to establish the objective component of sufficient provocation. Accepting Defendant's testimony as true, nothing that Lopez did or said would cause an ordinary person to experience an extreme emotion. And even if Lopez had caused Defendant to experience an extreme emotion, Defendant's lengthy incapacitation of Lopez gave him the opportunity to cool off from any extreme emotion. Finally, the prosecutor's isolated comment on Defendant's silence could not have led to the inference that Defendant fabricated his trial testimony because he gave initial statements to police that were entirely consistent with his trial testimony.

{33}     Under the unique circumstances of this case, we perceive no reasonable possibility that the prosecutor's comment on silence affected the jury's verdict. We therefore conclude that the prosecutor's comment on silence is harmless beyond a reasonable doubt.

## III. CONCLUSION

{34}     For the reasons stated, we hold that the prosecutor's comment on Defendant's silence was harmless error and accordingly reverse the Court of Appeals on that issue. We remand to the Court of Appeals for further proceedings consistent with this opinion on the other issues Defendant raised on appeal.

{35}     **IT IS SO ORDERED.**

_____
**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

_____
**JANE C. LEVY, Judge**
**Sitting by designation**