This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-42109

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**BRIAN FARLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     Defendant appeals from his conviction for second degree murder. This Court issued a notice of proposed summary disposition proposing to affirm. Defendant filed a combined memorandum in opposition and motion to amend the docketing statement, which we have duly considered. Remaining unpersuaded, we affirm.

**{2}**     In his memorandum in opposition, Defendant maintains his challenge to the sufficiency of the evidence, but now provides a clearer explanation of such claims. Defendant also seeks to amend the docketing statement to raise an additional issue as

to whether the jury instructions for second degree murder and voluntary manslaughter "imposed contradictory burdens on the issue of provocation," thus causing juror confusion, creating "a substantial risk that the jury misapplied the burden of proof," and violating due process. [MIO 2, 10-11] Defendant frames the jury instructions issue as both a challenge to the sufficiency of the evidence [MIO 6-15] and, alternatively, as instructional error. [MIO 15-17] Further, Defendant seeks reassignment of this matter to the general calendar. [MIO 1, 17] We address these issues in turn.

**{3}** Turning first to sufficiency of the evidence, Defendant asserts that the evidence supported a finding of provocation, and, because the State failed to present evidence disproving provocation, "no rational juror could have inferred the absence [thereof] without resorting to speculation." [MIO 12-14] Defendant also challenges the evidence supporting intent, contending that "[t]he evidence indicated that the killing was not intentional, but rather a reaction to longstanding trauma stemming from a history of abuse by [Defendant's] siblings," which was "reignited when he unexpectedly learned that his mother had known about the abuse for years and had failed to protect him." [MIO 7-8]

**{4}** When reviewing the sufficiency of evidence, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Further, we "do not search for inferences supporting a contrary verdict or re[]weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (internal quotation marks and citation omitted). We look to the jury instructions to determine what the jury was required to find to support their verdict, focusing our subsequent review on "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted); *see State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)).

**{5}** The jury instructions for both second degree murder and voluntary manslaughter required the State to prove beyond a reasonable doubt that Defendant: (1) killed his mother; (2) "knew that his acts created a strong probability of death or great bodily harm" to his mother; and (3) did not act in self-defense. [1 RP 181-82] Additionally, and of central importance to this appeal, the two instructions included distinct provisions regarding provocation. For second degree murder, the instruction required the State to prove that Defendant did *not* act as a result of sufficient provocation. [1 RP 181] For voluntary manslaughter, the State had to prove that Defendant *did* act as a result of sufficient provocation. [1 RP 182] The voluntary manslaughter instruction included an additional provision thoroughly explaining this distinction. [1 RP 182] In addition to the

offense-specific instructions, the jury was provided a definitional instruction for "sufficient provocation," as well as instructions as to intent, intoxication, and self-defense. [1 RP 180, 184-85, 187]

**{6}** The evidence presented at trial established that Defendant's mother, with whom Defendant lived, died from multiple stab wounds. [MIO 3] Defendant called 911 and reported that his mother "had a knife, had injured herself, was unconscious, not breathing, and unresponsive." [Id.] Defendant was present when officers arrived at the house and found the mother deceased. [Id.] Defendant, who admitted to being intoxicated, "made disjointed statements referencing past childhood abuse and suggesting a confrontation had taken place," and claimed that his mother had shot a gun at him. [Id.] Forensic evidence showed the mother's blood on Defendant's clothing, although Defendant was excluded as a possible contributor to the DNA evidence found on the knife that caused her injuries. [MIO 3-4]

**{7}** Further, as detailed in our notice of proposed disposition, the evidence also included the following: (1) body cam footage in which Defendant told officers that "he was trying to protect himself," and that he told his mother that his brothers had molested him as a child, that he found out his mother already knew this asserted fact, and that his mother then "began shooting everything"; (2) testimony from a responding officer that Defendant's home, where the victim was found, smelled strongly of bleach; (3) testimony establishing that officers did not observe any bullet holes in the home; and (4) testimony that a responding officer stated he was "concerned about [Defendant]'s demeanor and told other officers on scene that something was not right about [Defendant] and that he was not all there." [CN 2]

**{8}** Defendant's claim that the above evidence was insufficient effectively asks this Court to engage in fact-finding and reweigh the evidence to come to a different conclusion than that rendered by the jury, which we will not do. "We do not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence, and we do not weigh the evidence or substitute our judgment for that of the fact[-]finder so long as there is sufficient evidence to support the verdict." *Montoya*, 2015-NMSC-010, ¶ 52 (alterations, internal quotation marks, and citation omitted). Rather, we defer to the jury—including the jury's determinations regarding credibility and conflicting evidence—and disregard evidence that supports acquittal. *See Rojo*, 1999-NMSC-001, ¶ 19 (observing that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts"); *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). Further, in the context of this appeal and the question of provocation, "[w]hether a particular set of circumstances [demonstrates] sufficient provocation is generally a question for the jury to decide." *State v. Gaitan*, 2002-NMSC-007, ¶ 35, 131 N.M. 758, 42 P.3d 1207 (Minzner, J., concurring in part and dissenting in part) (internal quotation marks omitted); *see also State v. Lobato-Rodriguez*, 2024-NMSC-014, ¶ 23,

548 P.3d 21 ("By returning a verdict of second[] degree murder, the jury determined that [the d]efendant did not act in response to sufficient provocation.").

**{9}** Based on the above evidence, a jury could rationally believe that Defendant killed his mother and, despite his intoxication, was capable of both knowing the probability of harm created by his actions and forming the requisite intent. Further, the jury could rationally believe that Defendant did not act as a result of sufficient provocation and did not act in self-defense, notwithstanding the lack of Defendant's DNA on the knife and despite evidence suggesting that in the moments prior to her death, Defendant's mother made clear that she knew Defendant had endured abuse at the hands of his brothers. *See Rojo*, 1999-NMSC-001, ¶ 19. For these reasons, we conclude that the evidence presented—including circumstantial evidence of the crimes charged—was sufficient to support the jury's finding that Defendant was guilty of second degree murder. *See Montoya*, 2015-NMSC-010, ¶ 52.

**{10}** We turn next to Defendant's assertion, as an alternative to his sufficiency contentions, of instructional error based on the purported contradiction between the jury instructions for second degree murder and voluntary manslaughter. [MIO 15] Where, as here, a defendant's challenge to the jury instructions is unpreserved, we review for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "When reviewing jury instructions, we seek to determine whether a reasonable juror would have been confused or misdirected and consider jury instructions as a whole, not singly." *State v. Notah*, 2022-NMCA-005, ¶ 27, 503 P.3d 418 (text only) (citation omitted). "A jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law." *State v. Laney*, 2003-NMCA-144, ¶ 38, 134 N.M. 648, 81 P.3d 591.

**{11}** Defendant asserts, albeit in a speculative manner, that the framework of the second degree murder and voluntary manslaughter instructions impermissibly shifts the burden of proving provocation to a defendant, creates ambiguity, and violates due process principles. [MIO 9-11, 16] He contends that within the instructions, "the same factual element—provocation—is treated both as something the State must negate and something it must affirm" without explaining "the apparent contradiction or guid[ing] jurors in resolving it." [MIO 9] In support of these assertions, Defendant cites the Committee Commentary to UJI 14-220 NMRA, which notes that in *State v. Smith*, 1976-NMCA-048, ¶ 18, 89 N.M. 777, 558 P.2d 46, *rev'd on other grounds*, 89 N.M. 770, 558 P.2d 39 (1976), this Court stated that "proof of provocation beyond a reasonable doubt is not required for a conviction of voluntary manslaughter." The committee commentary—which is not binding, *see State v. Stalter*, 2023-NMCA-054, ¶ 10, 534 P.3d 989—states that the *Smith* Court "pointed out, by way of dicta, that the state has the burden of proving that the defendant did not act as a result of sufficient provocation in order to prove the material elements of second degree murder," but did not "decide which of the parties has the burden of proving sufficient provocation in order to establish the elements of voluntary manslaughter." *See* UJI 14-220, comm. cmt.; *see also Smith*, 1976-NMCA-048, ¶¶ 17-18 (same).

**{12}**     Where, as here, a claim of instructional error is unpreserved, we review for fundamental error and "seek to determine whether a reasonable juror would have been confused or misdirected and consider jury instructions *as a whole*, not singly." *Notah*, 2022-NMCA-005, ¶ 27 (text only) (citation omitted); *see Benally*, 2001-NMSC-033, ¶ 12 (providing that "[t]he standard of review we apply to jury instructions depends on whether the issue has been preserved," and if the issue is unpreserved "we review for fundamental error").

**{13}**     Here, the jury was instructed in accordance with the Uniform Jury Instructions for second degree murder, voluntary manslaughter, and the definition of "sufficient provocation." [1 RP 180, 182, 184-85, 187]  *See* UJI 14-210 NMRA (specifying that in order for a jury to find a defendant guilty of second degree murder, the state is required to prove beyond a reasonable doubt that "[t]he defendant did not act as a result of sufficient provocation"); UJI 14-220 NMRA (specifying that in order for a jury to find a defendant guilty of voluntary manslaughter, the state is required to prove beyond a reasonable doubt that "[t]he defendant acted as a result of sufficient provocation"); UJI 14-222 NMRA (defining "sufficient provocation"); *see also State v. Ortega*, 2014-NMSC-017, ¶ 32, 327 P.3d 1076 (stating that the "[u]niform jury instructions are presumed to be correct").

**{14}**     Notably, this case does not involve a question of whether a voluntary manslaughter instruction should have been given in the first place. *See State v. Gaitan*, 2002-NMSC-007, ¶¶ 1, 11-14, 131 N.M. 758, 42 P.3d 1207; *State v. Chavez*, 2022-NMCA-007, ¶¶ 23, 26-27, 33, 504 P.3d 541; *State v. Munoz*, 1992-NMCA-004, ¶¶ 2, 14, 113 N.M. 489, 827 P.2d 1303. Nor does this case involve a question of whether the district court erred in issuing an instruction for second degree murder that omitted the essential element of "without sufficient provocation." *See State v. Swick*, 2012-NMSC-018, ¶¶ 47, 55, 58, 279 P.3d 747. Rather, here, the second degree murder and voluntary manslaughter instructions were provided in full, and all pertinent instructions clearly specified that it was the State's burden to prove sufficient provocation. Indeed, beyond the burden of proof as to provocation, the jury instructions also made clear that the State had the burden of proof as to each element and relevant finding, including intent, intoxication, and self-defense. [1 RP 180, 185, 187] Thus, contrary to Defendant's assertions, we do not agree that the jury instructions created a contradiction or ambiguity regarding the burden of proof for provocation or any other requisite element. Nor do we agree that the instructions created ambiguity that would confuse the jury as to which party carried such burden. *See Benally*, 2001-NMSC-033, ¶ 12. The instructions did not imply that Defendant carried any burden of proof or otherwise obfuscate the State's burden. Rather, the relevant instructions fairly and accurately presented the law, and unambiguously and consistently specified the State's burden to prove the requisite elements, including whether Defendant did or did not act as a result of sufficient provocation.

**{15}**     Lastly, we decline Defendant's invitation to assign this matter to the general calendar for transcript review. In the memorandum in opposition, Defendant asserts that certain transcripts—namely for the pretrial hearings and the parties' closing

arguments—along with the parties' proposed jury instructions and questions submitted by the jury, are not contained within the record proper but are necessary to the resolution of Defendant's appeal. [MIO 1] We note that Defendant's contention in this regard is speculative. Defendant states that by proceeding without this information, which he asserts includes the portions where legal theories were argued and "juror confusion may have emerged," this Court "risks affirming a homicide conviction without ensuring the verdict was legally sound." [MIO 19] However, Defendant does not indicate with any specificity how the legal theories argued below would weigh on the issues on appeal, nor does Defendant identify any facts indicating that the jurors were, in fact, confused. The fact that the jury submitted questions is not proof that they were confused by the instructions, which we presume they followed. *See id.* ¶ 21 ("We presume that the jury followed the instructions given by the trial court, not the arguments presented by counsel.").

**{16}**    Defendant similarly does not challenge any facts of record, but rather asserts that there may be *additional* facts supporting acquittal that could arise from further mining of additional portions of the record and transcripts. This is not a sufficient basis upon which to assign a case to the general calendar. *See State v. Ibarra*, 1993-NMCA-040, ¶ 4, 116 N.M. 486, 864 P.2d 302 (explaining that this Court is not obligated to permit access to transcripts during the summary calendar process where "the sole allegation is that it is necessary to sort through the transcript for unidentified error"); *see also id.* ¶ 10 ("The facts contained in the docketing statement are accepted as the facts of the case unless they are challenged."); *Rojo*, 1999-NMSC-001, ¶ 19 ("[E]vidence supporting acquittal does not provide a basis for reversal.").

**{17}**    Contrary to Defendant's assertions, "a record of sufficient completeness does not translate automatically into a complete verbatim transcript," *Ibarra*, 1993-NMCA-040, ¶ 9 (internal quotation marks and citation omitted), and this Court is "free to determine the nature and extent of the trial record necessary to fully review the issues raised in each case and require a transcript in only those cases where it would advance appellate resolution of the issues raised." *Id.* Based on our above conclusions that sufficient evidence supported Defendant's conviction and the jury instructions did not result in any error, and there being no indication that the verdict rendered by the jury is suspect or otherwise unsupported, we are not persuaded by Defendant's request to assign this matter to the general calendar. *See State v. Moore*, 1989-NMCA-073, ¶¶ 36-51, 109 N.M. 119, 782 P.2d 91 (explaining that this Court will deny motions to amend that raise issues that are not viable, even if they allege fundamental or jurisdictional error), *superseded by rule on other grounds as recognized in State v. Salgado*, 1991-NMCA-044, 112 N.M. 537, 817 P.2d 730.

**{18}**    "Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law." *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683. We conclude that Defendant has failed to meet his burden of demonstrating error in our proposed disposition and in the ruling below. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (noting that there is a presumption of correctness in the

rulings or decisions of the trial court, and the party claiming error bears the burden of showing such error).

**{19}** For the reasons stated in our notice of proposed disposition and herein, we affirm Defendant's convictions. We deny Defendant's motion to amend.

**{20}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**MEGAN P. DUFFY, Judge**