This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: May 7, 2026**

**No. S-1-SC-40696**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID SALAZAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Bennett J. Baur, Chief Public Defender
Anne T. Amicarella, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Santa Fe, NM
Serena R. Wheaton, Assistant Solicitor General
Albuquerque, NM

for Appellee

### DECISION

**THOMSON, Justice.**

**{1}** Defendant David Salazar was convicted of willful and deliberate first degree murder and tampering with evidence. *See* NMSA 1978, § 30-2-1(A)(1) (1994); NMSA 1978, § 30-22-5 (2003). Defendant argues his murder conviction should be reversed and remanded for a new trial because the district court committed reversible error by

denying his request for jury instructions on mistake of fact and inability to form deliberate intent based on mental disease or disorder.

**{2}**     We conclude that the mistake-of-fact instruction was properly denied because (1) the alleged mistake of fact would not negate the mental state for first degree murder and the sufficient provocation instruction adequately instructed the jury on mistake through the instruction on sufficient provocation, (2) the inability to form deliberate intent instruction was properly denied because nothing in evidence indicated Defendant's grief affected his ability to form intent, and (3) there was no cumulative error. The legal issues underlying this case have been previously decided by New Mexico appellate courts, so we exercise our authority to affirm the conviction by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## I.     BACKGROUND

**{3}**     Defendant, whose ex-wife and oldest son had recently died, lived with his younger son on property owned by Defendant's uncle, who rented out cabins and other residences on the property. Victim Joseph Keleher lived in a cabin on the property and worked as a teacher in Jemez Valley schools, which Defendant's son attended. According to witness testimony, on the morning of the murder Defendant was driving erratically up and down the gravel road running across the property. Around 10:30 that morning, a neighbor reported hearing two "pops." Deputy Valencia from the Sandoval County Sheriff's Office was dispatched to the property in response to a possible shooting.

**{4}**     Upon arrival, Deputy Valencia encountered Defendant and asked, "What's going on?" Defendant initially told her there was a man "laying down" in a nearby cabin, but he eventually revealed that the man was a teacher from the local school and that he was dead. He later told the Deputy that he shot Victim because he just found out that Victim was sexually abusing his son.

**{5}**     Defendant's son was subsequently given a safehouse interview, where he maintained that he had not been sexually abused by Victim and knew Victim was a teacher but did not actually know him. The son testified that he did not know Victim beyond seeing him around school or across the road. Other investigations likewise did not indicate Victim had any history of committing sexual abuse.

**{6}**     Defendant was charged with an open count of murder and tampering with evidence. At trial, Defendant advanced the following theories: (1) that his grief over losing two loved ones rendered him unable to form the deliberate intent required for first degree murder, and (2) even if he was mistaken about his son being molested, the mistake was sufficient provocation to reduce second degree murder to manslaughter. Accordingly, Defendant requested jury instructions on inability to form specific intent due to mental disease or disorder and mistake of fact. The district court denied both requests for lack of evidence. The jury was instructed on first degree deliberate intent murder, second degree murder, and voluntary manslaughter. Importantly, the jury was instructed that circumstances that aroused sudden anger, rage, or other extreme

emotions could be sufficient provocation to reduce second degree murder to voluntary manslaughter. The jury found Defendant guilty of first degree, willful and deliberate murder.

**{7}** Defendant now appeals his murder conviction directly to this Court, arguing that the denial of the requested jury instructions was reversible error. *See* N.M. Const. art. VI, § 2 (providing that capital appeals shall be made directly to the Supreme Court). We disagree and affirm the district court.

## II.    DISCUSSION

**{8}** "'The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo.'" *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (quoting *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438). "'When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction[s].'" *Id.* (alteration in original) (quoting *State v. Contreras*, 2007-NMCA-119, ¶ 8, 142 N.M. 518, 167 P.3d 966). "'[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in [their] favor.'" *Gaines*, 2001-NMSC-036, ¶ 6 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

## A.    Mistake-of-Fact Instruction

**{9}** "A defendant is entitled to have the jury instructed on [their] theory of the case if that theory is supported by the evidence." *State v. Nieto*, 2000-NMSC-031, ¶ 15, 129 N.M. 688, 12 P.3d 442. To warrant a mistake-of-fact instruction, there must be evidence of a mistake of fact that, if true, would negate the required intent of the crime charged. *See State v. Apodaca*, 2025-NMSC-015, ¶ 21, 572 P.3d 913.

**{10}** Defendant was charged with an open count of murder. Under New Mexico law, the molestation of a family member does not negate deliberate intent or otherwise serve as a defense to first degree murder. *See generally* NMSA 1978, §§ 30-2-1 to -7 (1963, as amended through 2021). Therefore, Defendant's mistake of fact, if true, would not have negated the required intent for first degree murder, and the district court did not err in rejecting the instruction as it pertains to first degree murder.

**{11}** Defendant argues that the instruction was still warranted because molestation of a family member may serve as sufficient provocation to reduce second degree murder to manslaughter. *See State v. Munoz*, 1992-NMCA-004, ¶¶ 12-14, 113 N.M. 489, 827 P.2d 1303 (holding a reasonable jury could find that the revelation that the defendant's wife had been repeatedly sexually abused by her step father was sufficient provocation). While Defendant is correct that mistake of fact may serve as sufficient provocation, a "trial court need not give a mistake of fact instruction where the intent element of the crime is adequately defined by the other instructions given by the trial court." *State v. Bunce*, 1993-NMSC-057, ¶ 9, 116 N.M. 284, 861 P.2d 965. Where a given instruction "allows and is consistent with mistaken belief," a defendant is not

entitled to a mistake-of-fact instruction. *See State v. Venegas*, 1981-NMSC-047, ¶¶ 8-9, 96 N.M. 61, 628 P.2d 306.

**{12}** The jury was instructed that second degree murder could be reduced to voluntary manslaughter if Defendant acted as a result of sufficient provocation. A separate instruction defined "sufficient provocation" as "any action, conduct, or circumstances which arouse anger, rage, fear, sudden resentment, terror, or other extreme emotions." The jury was therefore permitted to consider Defendant's theory that his mistake of fact caused extreme emotions resulting in a temporary loss of self-control during which Defendant shot Victim. The mistake-of-fact theory was thus subsumed by the sufficient provocation instruction.

**{13}** The given instructions allowed and were consistent with Defendant's mistake-of-fact theory. Defendant was not entitled to an additional, more-specific instruction. *See State v. Beal*, 1974-NMCA-054, ¶ 6, 86 N.M. 335, 524 P.2d 198 (citing *State v. Rushing*, 1973-NMSC-092, ¶¶ 18-19, 85 N.M. 540, 514 P.2d 297) (holding that "where other instructions adequately cover the law refusal to give a separate instruction is not error"). We note that the district court rejected the mistake-of-fact instruction based on lack of evidence, but the end result of its ruling was correct, so we find no error. *See Boyett*, 2008-NMSC-030, ¶ 25 (finding no error and affirming where, "[a]lthough the trial court erred in its reasons for denying the instruction, the end result of its ruling was correct").

## B.    Inability to Form Deliberate Intent Due to Mental Disease or Disorder Instruction

**{14}** When an inability to form specific intent defense is based on a mental disease or disorder, an instruction "is proper only when there is evidence that reasonably tends to show that the defendant's claimed mental disease or disorder rendered the defendant incapable of forming specific intent at the time of the offense." *State v. Balderama*, 2004-NMSC-008, ¶ 38, 135 N.M. 329, 88 P.3d 845. The district court must determine whether sufficient evidence exists to give the instruction, but it may not weigh the evidence. *State v. Privett*, 1986-NMSC-025, ¶ 20, 104 N.M. 79, 717 P.2d 55.

**{15}** Evidence of a mental disease or disorder alone is insufficient to warrant the instruction. *See Boyett*, 2008-NMSC-030, ¶ 30. Instead, the evidence must tie the mental condition to an inability to form specific intent at the time of the crime. *Id.* Expert testimony is not required to make this connection if "the alleged cause of the defendant's inability to form specific intent is within the realm of common knowledge and experience." *Id.* ¶ 28 (citing *Privett*, 1986-NMSC-025, ¶ 20 (holding that intoxication was within the realm of common knowledge and experience)).

**{16}** At trial, the State opposed Defendant's proposed instruction, arguing that there was insufficient evidence to support an instruction on inability to form deliberate intent due to mental disease or disorder. The parties also addressed whether expert testimony was required to justify the proposed instruction. The district court denied the instruction, citing insufficient evidence. On appeal, Defendant argues that no expert testimony is

required for this instruction because it is commonly understood that grief "may affect one's ability to process information and to exercise judgment." The State argues that "Defendant's grief was never tied to an inability to form deliberate intent." While we agree with Defendant that expert testimony is not always required for this instruction, we need not reach whether it was required in this instance because nothing in evidence ties Defendant's grief to an inability to form the requisite intent. On this point, *State v. Boyett*, 2008-NMSC-030, is particularly instructive.

**{17}**    In *Boyett*, the defendant requested an instruction on inability to form specific intent due to mental disease or disorder, but the only evidence of the defendant's mental disorder was the defendant's testimony describing his organic brain damage. *Id.* ¶ 30. The district court denied the instruction because no expert witness testified to the brain damage. *Id.* ¶ 26. On appeal, this Court did not take issue with the absence of an expert. Instead, the Court held the instruction was properly denied because "[n]either [the d]efendant nor any other witness testified about how those facts showed [the defendant] was unable to form the requisite intent at the time of the offense." *Id.* ¶ 30. Thus, mere evidence of brain damage was insufficient where the evidence did not indicate an inability to form intent.

**{18}**    Defendant points to the following as sufficient evidence to warrant the instruction: (1) Defendant's statement to Deputy Valencia that his son's mother had just died, (2) testimony that Defendant was driving erratically, (3) testimony that Defendant's ex-wife and eldest son had recently died, and (4) Defendant's recorded statement that he was "out of [his] mind" the day of the murder. None of this evidence links Defendant's grief to his ability to form a specific intent at the time of the murder.

**{19}**    Defendant's statement to Deputy Valencia that his ex-wife had just died was not made as an explanation for his behavior—it was made in response to the Deputy's question about whether Defendant's son could stay with his mother, given that Defendant was under arrest. Defendant made no other statements to the Deputy about his ex-wife nor did he indicate any feelings of loss or grief regarding her passing.

**{20}**    Defendant's neighbor testified that Defendant was driving in loops around the area and revving his engine loudly on the morning of the murder. The witness testified that Defendant always drove that way, but it was "more erratic than usual" so she called the property owner to complain. No testimony tied the erratic driving to the deaths of Defendant's ex-wife and son.

**{21}**    On cross-examination, defense counsel asked multiple witnesses if they knew Defendant had recently lost his ex-wife and son. In all instances, defense counsel then moved on to other topics after asking about the deaths—neither inquiring about whether Defendant appeared to be grieving nor whether the losses led to a change in behavior. Thus, to arrive at the conclusion that Defendant was grieving, the jury would have to make an inference based on evidence of the recent deaths in his life. There was no additional evidence from which to make an additional inference that any grief Defendant was experiencing was so severe that he could not reason or formulate a specific intent

to kill someone. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (noting that "[a]n ultimate inference may not be based on a series of inferences").

**{22}** Defendant's statement that he was "out of [his] mind" also does not link any inferred grief to an inability to form intent. He made the statement during a recorded meeting with his mother and daughter as they discussed whether he had confessed to murder. When they told him he had admitted to first degree murder, he responded that he was "out of [his] mind" to have done that. At no point in this conversation did Defendant, his mother, or his daughter mention the deaths of his ex-wife and oldest son or discuss how Defendant felt the day of the killing. On cross examination, defense counsel did not ask the daughter any questions about the statement or attempt to connect it to Defendant's grief.

**{23}** The evidence pointed to by Defendant in support of the instruction may permit an inference of grief, but evidence of a mental condition alone is insufficient to warrant the instruction. Defendant must also have provided evidence that "reasonably tends to show" that his grief rendered him "incapable of forming specific intent at the time of the offense." *Balderama*, 2004-NMSC-008, ¶ 38. Defendant failed to do so. Accordingly, there was insufficient evidence to grant the instruction, and the instruction was properly denied.

## C.    Cumulative Error

**{24}** "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 53, 399 P.3d 367. But where "the district court did not err, there can be no cumulative error." *State v. Veleta*, 2023-NMSC-024, ¶ 43, 538 P.3d 51. Having found the district court did not err in denying either requested instruction, there can be no cumulative error here.

## III.    CONCLUSION

**{25}** We therefore affirm Defendant's conviction for willful and deliberate first degree murder.

**{26}   IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JULIE J. VARGAS, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**BRIANA H. ZAMORA, Justice**